Christopher Allen
MITCHELL, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–89–286–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 2, 1989.

Barry L. Jones, Houston, for appellant.

Calvin A. Hartmann, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

A jury found appellant guilty of delivery of a controlled substance, namely cocaine, weighing at least 400 grams. The jury assessed punishment at confinement for forty years in the Texas Department of Corrections, and a fine of one dollar. Appellant brings five points of error asserting: (1) improper admission of hearsay evidence; (2) admission of irrelevant evidence designed to appeal to passion or prejudice; (3) improper prohibition of impeachment of a State's witness; (4) improper jury argument; and, (5) insufficient evidence to corroborate accomplice testimony. We affirm.

Appellant was arrested in California and extradited to Harris County, Texas. A few weeks earlier appellant had escaped in his red Toyota from a mid-afternoon drug bust in Houston.

An agent with the Drug Enforcement Agency, Cliff Brothers, was working on several cases in Houston with a paid confidential informant known as "Porkchop." With the help of Porkchop and through a series of small drug purchases, Brothers gained the confidence of several drug dealers and became able to negotiate the purchase of two kilos of cocaine from appellant for $40,000. Delivery was arranged to be made by an accomplice in the parking lot of a Handy Dan store near the Astrodome in Houston. There were three cars involved: (1) that of Agent Brothers; (2) that of Porkchop in which the appellant's accomplice was a passenger; and, (3) the red Toyota occupied by appellant who observed the transaction. After cocaine was delivered by the accomplice to Brothers in the back seat of the second car, Brothers gave a prearranged signal and police moved in to make arrests. At this point, appellant fled the parking lot followed by police in a high-speed chase through city streets. Appellant later escaped on foot after losing the police and abandoning his car.

Porkchop did not testify, but his identity was made known and he was available if the defense had wished to call him.

Appellant testified that the accomplice was a boyhood friend with whom appellant had recently been reunited while visiting Houston from his place of business in California. Appellant had been with Porkchop and the accomplice at an apartment complex in which a girlfriend lived. He further testified that he left the apartment in the company of the other two men and followed them in his girlfriend's car to the

Handy Dan parking lot. Appellant said the other two men had arranged for him to get tickets to a Michael Jackson concert and that the stop at Handy Dan's was en route to the picking up of those tickets. Appellant explained that he became frightened when people with guns began the melee in the parking lot, that he left in a hurry (but not at excessive speed) and drove to the apartment of a friend. When he returned to his car, it was gone. He took a bus back to Los Angeles without returning to the home of his parents in Houston where he had been visiting.

The accomplice had pled guilty and was promised a twenty-year sentence for testifying at the trial. He explained that cocaine he delivered to Agent Brothers was furnished by appellant and that his previous involvement in drug traffic was limited to the sale of small amounts of "crack" to supplement his income as an auto parts manager. He had been led to believe Agent Brothers and Porkchop were cousins and previously had made a few small sales to them. He agreed to find five kilos of cocaine for the undercover DEA agent at $15,000 each kilo and he contacted appellant for that purpose. The price was later increased to $20,000 when appellant had difficulty obtaining inventory. Then Brothers reduced the quantity to two kilos with the possibility of buying more later. Appellant, the accomplice, and Porkchop were in the apartment of appellant's girlfriend just before the delivery. Appellant wanted delivery to take place at the apartment, but at Brothers' insistence the Handy Dan location was selected in a phone conversation initiated by Porkchop to Brothers in the presence of appellant and the accomplice. When Brothers entered Porkchop's car to inspect and receive the cocaine, the accomplice searched Brothers to be sure he was not "wired." The accomplice said appellant, who was not in the car, instructed him in advance to make such a search before delivering the two kilos of cocaine.

■ In his first point of error appellant calls attention to his overruled objection to testimony of Agent Brothers which he classifies as "hearsay" and inadmissible under Rule 802 of the Texas Rules of Criminal Evidence. Specifically, Brothers testified that Porkchop told him that appellant and his accomplice had come to Porkchop's home and had discussed the purchase of five kilograms of cocaine, and that the price was increased to $20,000 each. Other parts of Brothers' testimony, and that of the accomplice, show Porkchop clearly was a middleman in the transaction between Brothers and the two drug dealers. According to the Rules of Criminal Evidence, the contested part of Brothers' testimony falls outside the scope of hearsay and was therefore properly admitted into evidence:

> A statement is not hearsay if ... The statement is offered against a party and is ... a statement by a person authorized by him to make a statement concerning the subject ...

TEX.R.CRIM.EVID. 801(e)(2)(C).

The statement was offered by Brothers' testimony against appellant (the accused "party"), and was a statement of Porkchop who was authorized by appellant to communicate such information to Brothers. Point of error number one is overruled.

■ In his second point of error appellant points to the objection made by defense counsel to a line of questions the prosecutor asked appellant at the punishment phase of trial. The prosecutor tried to help the jury measure the enormity of the offense by establishing the number of units of "crack" it would be possible to create from two kilos of cocaine.[1] The defense objected to the subject matter being presented as having no relevance to punishment. The point of error on appeal adds to the question of relevance the thought that the subject matter "was an appeal to passion and prejudice" without citing any authority for bringing in such new allegations. We see no error. But if there was error it was harmless beyond reasonable doubt. The appellant himself agreed that "60,000 units of crack cocaine could produce an awful lot of mothers who

1. In final argument, the prosecutor told the jury, "It's roughly 60,000 hits of crack cocaine that would have hit the street but for one man seated right there—Cliff Brothers."

would come in and cry about what happened to their children." This proposition was offered to him by the prosecutor after appellant's own mother took the stand to ask for mercy from the jury for her only son. Appellant also agreed that the jury should take into consideration the potential for 60,000 units of crack in deciding proper justice.

The range of punishment was fifteen to ninety-nine years or life, with a maximum fine of $250,000. The prosecutor asked for a forty-five year sentence. The sentence of forty years plus a fine of one dollar is sufficiently inside the lower end of the full range of punishment to assay the impact of the contested questioning as resulting in no unreasonable effect on the jury. Point of error number two is overruled.

 In point of error number three appellant claims he was improperly denied the opportunity to impeach the accomplice on cross-examination. The trial court sustained objection to appellant's attempt to ask if the accomplice saw Agent Brothers "as a reputable person who you would trust and believe?" Had appellant laid the proper foundation for such a question on truth and veracity it may have been acceptable under Rule of Criminal Evidence 701 as being "rationally based on the perception of the witness." However, appellant did not lay the proper predicate for the question, nor did he submit an offer of proof as to what the accomplice would have said had proper impeachment been undertaken. Point of error number three is overruled.

 In a fourth point of error appellant argues for reversal because the prosecutor said in his closing statement that the jury should know from watching TV and reading the newspapers that being a "snitch" wasn't a healthy thing for the accomplice, and that he would be in jeopardy while in the penitentiary with other convicted drug dealers. While we see no harm from a statement which is simple common knowledge, there was no preservation of error by objection at trial. TEX.R.APP.P. 52(a). *Armstrong v. State,* 718 S.W.2d 686, 699

(Tex.Crim.App.1985). Point of error number four is overruled.

 Appellant claims in his final point of error that there was insufficient evidence to corroborate the testimony of the accomplice. In the case of accomplice testimony there must be other evidence tending to connect the defendant with the offense. TEX.CRIM.PROC.CODE art. 38.14. The following rules apply to the application of article 38.14: (1) each case must be considered on its own facts and circumstances; (2) all the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary; (3) corroborative evidence may be circumstantial or direct; (4) the combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test; (5) it is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt; and (6) insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration of accomplice witness testimony. *Moreno v. State,* 761 S.W.2d 407, 409 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), citing *Reed v. State,* 744 S.W.2d 112 (Tex.Crim. App.1988). There is more than sufficient other evidence in the record to connect appellant with the offense. Agent Brothers testified that he had at one point spoken with appellant on the telephone about the transaction. Porkchop told Brothers appellant would be driving a red Toyota when he arrived at the delivery point. A DEA surveillance team observed appellant leave the apartment complex (in the company of Porkchop and the accomplice) and drive alone in the red Toyota to the Handy Dan parking lot. Appellant was observed driving around the Handy Dan parking lot, suspiciously redeploying his vehicle several times while he watched the delivery take place. One DEA officer who was at the Handy Dan lot testified that while he was closing in to arrest appellant he could clearly see appellant a few feet away and knew appellant also saw him as appellant narrowly missed hitting him with the Toyota in the initial escape from the scene. That

DEA officer and his partner both wore raid jackets with "Police, Federal Agent" printed on the back and front. Appellant left the scene followed by four or five police cars which chased him at speeds of at least 85 MPH in city traffic. When a DEA agent later went to the Houston home of appellant's parents where appellant had been staying, he observed on a coffee table a scrap of paper which had handwritten money calculations matching those of the 5 kilos of cocaine at market prices introduced in other testimony. Point of error number five is overruled.

The judgment of conviction is affirmed.