**Dennis M. EVANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–90–057–CR.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 18, 1990.

S. Reese Rozzell, Rockport, for appellant.

Thomas L. Bridges, Sinton, for appellee.

Before BENAVIDES, KENNEDY and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

Pursuant to a plea bargain, appellant was convicted of possessing less than 28 grams of heroin. Punishment was assessed at 12 years in prison and a fine of $1,500. We affirm.

In his sole point of error, appellant contends the trial court erred in not suppressing heroin discovered in his pocket during a warrantless search. Appellant contends that the police had no reason to suspect that he possessed heroin. The State contends that the police had probable cause to make a warrantless search. We agree with the State.

At the hearing on appellant's motion to suppress, Officer Martin DeLeon testified that on the afternoon in question he and other officers were executing a search warrant for heroin at the apartment of Richard and Lila Lund. Inside the apartment, the officers found narcotics residue, small pieces of foil, packaging material, and ledgers.

While the officers were at the apartment, the telephone rang. Officer DeLeon an-

swered it and said, "Yeah." He then described what happened as follows:

> They said, "This is Gary." And I said, "Yes." He says, "Hey can I come over and pick up my boots?" And I said, "Yeah." And then he questioned me about my voice, and I told him I had a cold. And the conversation went on, he says, "How much do you need," something to that effect. And I said, "Two." And he says, "Okay. I'll be right there."

The caller spoke in hushed tones. DeLeon believed that his request for "two," and Gary's response, meant that two eight balls of cocaine or heroin would be delivered to the apartment. DeLeon did not recognize the caller's voice, so he asked the Lunds if they knew a "Gary" who was supposed to come and pick up some boots. They said it was Gary Evans. DeLeon testified at the motion to suppress hearing that he had known Evans throughout his law enforcement career (10 years). DeLeon further testified, without specifying why, that he had knowledge about Evans' possible dealing in narcotics.

DeLeon and the other officers then waited for Evans.[1] After about an hour, according to DeLeon, he decided to end the operation. He told the departing officers to be on the lookout for Evans, who would possibly be driving his usual vehicle, a two-tone green, light olive Ford pickup truck. DeLeon told the officers to stop and detain the vehicle.

Minutes later, two DPS troopers notified DeLeon that they had spotted the vehicle in a roadside park located half a block from the Lunds' apartment. DeLeon went to the location and found Evans and his brother, the appellant.

Department of Public Safety Officer Stephen Miller testified that he assisted in the search of the Lunds' apartment. He stated that he remained at the apartment in the nature of forty-five minutes after Evans said he was on his way over with heroin. At the hearing, Miller testified that he and

his partner spotted the vehicle at the roadside park as they were leaving. Miller also knew Gary Evans. In the truck, appellant sat behind the wheel, and Gary sat on the passenger's side. Both occupants had their heads down.

According to Miller, when he pulled his car in behind them and the Evans brothers saw the troopers, they "immediately went down inside the car and they were jumping around, and it looked to us like they were trying to hide something underneath the seats." Miller's partner, Officer Andres Maldonado, testified that the occupants were acting nervously, ducking, looking back, and trying to hide something under the seats. The officers approached the vehicle, and Maldonado ordered the occupants to put their hands on the dash. They did not comply until ordered to do so a second time. The officers ordered the occupants to exit the vehicle on the driver's side. As they exited, Officer Maldonado saw a syringe lying on the passenger side floorboard.

Once the two were out of the car, the officers searched them for weapons. Miller testified that he becomes scared when somebody starts jumping around in the car the way the brothers were doing. Miller patted down Gary and found nothing. Maldonado patted down appellant for weapons and felt a small item in appellant's left front shirt pocket. Maldonado believed that, crunched in the position it was, the item could have been a knife. Maldonado also testified that he believed the suspects might possess controlled substances. The item was a foil paper containing four smaller foil papers which contained heroin.

The sole issue in this appeal is whether the officers had probable cause to seize and search appellant. The validity of a warrantless search or arrest is judged by the "totality-of-the circumstances" approach. *Angulo v. State,* 727 S.W.2d 276, 279 (Tex. Crim.App.1987); *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527

---

**1.** DeLeon testified that he did not believe he had sufficient information to obtain a warrant because he did not know whether he could rely on the information received from the Lunds. Given the later events, it is not significant that DeLeon had doubts about the Lunds credibility at this point.

(1983). Probable cause is a practical, nontechnical conception. *Gates*, 462 U.S. at 231, 103 S.Ct. at 2328. It is a fluid concept—turning on the assessment of probabilities—not readily, or even usefully, reduced to a neat set of legal rules. *Id.* at 232, 103 S.Ct. at 2329. The term "probable cause" according to its usual acceptation, means less than evidence which would justify condemnation. It imports a seizure made under circumstances which warrant suspicion. *Id.* at 235, 103 S.Ct. at 2330. Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. *Id.* at 235, 103 S.Ct. at 2330.

■ In determining whether the search of appellant was authorized, we scrutinize the collective information in possession of all the officers involved, including the individual officers involved at the time appellant was searched.[2] *Jackson v. State*, 745 S.W.2d 4, 9 (Tex.Crim.App.1988). A trained officer is allowed to draw inferences and make deductions that might elude an untrained person. *See Jackson*, 745 S.W.2d at 10; *id.* at 19–20 (Clinton, J., concurring).

■ Viewed in the light most favorable to the trial court's ruling, the evidence shows that an officer executing a search warrant at a location involved in narcotics received a suspicious telephone call. The circumstances were such that a police officer could reasonably interpret the conversation as one in which the caller agreed to deliver illegal drugs to the location.[3] Immediately, after hearing this call, Officer DeLeon learned that the "Gary" he had spoken to was Gary Evans. Although there was some doubt in DeLeon's mind about the Lunds' credibility at this point, the reliability of that identification was bolstered, at least in part, by DeLeon's prior knowledge about Gary Evans and his relation to narcotics. By this point, a trained

police officer could reasonably find it likely that Gary Evans would appear at the apartment to deliver narcotics. Had Gary Evans appeared, the police certainly would have been justified in searching him.

Evans, however, did not appear, and the question is whether his failure to appear meant that all reasonable suspicion evaporated. We believe that it did not, but acknowledge that as time passed, the likelihood of Evans possessing narcotics decreased. It was, though, only forty-five minutes after the call was received that Officer Miller and his partner spotted Evans in his pickup truck only one-half block from the Lunds' apartment. We believe that this short period of time did not significantly reduce the probability that Evans possessed illegal narcotics. We also believe the close proximity of Evans to the Lunds' apartment is a factor which tended to bolster Officer DeLeon's belief that Gary Evans was the person who telephoned, and made it more likely that Evans possessed illegal narcotics. It is certainly more likely that he possessed the illegal narcotics than if he had been spotted some distance from the Lunds' apartment. Thus, at the time the officers spotted Evans, the expired time and proximity to the apartment weighed in favor of there being probable cause to search Gary Evans.

■ The next question, then, is whether the police could reasonably suspect appellant of criminal activity. At the moment before Officer Miller and his partner saw the truck, there was no reason to suspect that any person other than Gary Evans possessed narcotics. But, upon pulling behind Evans' truck, the officers saw both occupants react in a manner which indicated they were trying to hide something. In light of the circumstances, it was reasonable for the officers to conclude from the joint reaction of the truck's occupants that both occupants were involved in the

---

**2.** Facts which establish probable cause to justify a search will not always justify a custodial arrest. *See* LaFave, Search and Seizure § 3.1(b) (West 1987). In this case, the officers would have had no reason to custodially arrest the occupants of the truck for possession of illegal

narcotics unless the search uncovered illegal narcotics.

**3.** We note that telephonic narcotics transactions are often negotiated in ambiguous or coded terms. *See Guerra v. State*, 760 S.W.2d 681, 695 (Tex.App.—Corpus Christi 1988, pet. ref'd).

possession of narcotics. Appellant's mere proximity to his brother would not have justified a search; appellant's reaction in combination with the facts incriminating his brother, however, justified the search. Furtive gestures are a valid indicia of mens rea, when coupled with reliable information or other suspicious circumstances. *Smith v. State*, 542 S.W.2d 420, 421 (Tex.Crim. App.1976). Under the totality of the circumstances, the police were justified in searching appellant. We find that the trial court did not err in overruling appellant's motion to suppress the heroin. Appellant's sole point of error is overruled.

The judgment of the trial court is AFFIRMED.