**Elvis KELLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–90–060–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 14, 1991.

Discretionary Review Refused
June 19, 1991.

Jerry B. Register, Huntsville, Roy E. Greenwood, Austin, for appellant.

Jack Phillips, David P. Weeks, Huntsville, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a conviction of possession of cocaine with intent to deliver under the Texas Controlled Substances Act. The jury found appellant guilty as charged and sentenced him to 99 years imprisonment and a $10,000 fine. In seven points of error, appellant complains of the sufficiency of the evidence and argues that the trial court erred in: (1) denying his motion to suppress; (2) allowing accomplice testimony that was tainted as a result of an illegal arrest; (3) permitting impeachment evidence of an extraneous offense during the guilt/innocence phase of the trial; and (4) allowing improper impeachment during the punishment phase. We find no error in the denial of the motion to suppress, but we reverse and remand because of the admission of the extraneous offense. In view of our discussion and ruling on the motion to suppress, the extraneous offense and the factual sufficiency points, we do not address the remaining points raised.

A brief recitation of the facts elicited at the hearing on appellant's motion to suppress is necessary to address appellant's first point concerning the alleged illegality of the search. About 10:00 p.m. on the evening of August 16, 1989, Byron Bush, a deputy with the Walker County Sheriff's Department, received a telephone call from Deputy Dickey, also with the Walker County Sheriff's Department. Dickey told Bush that he had just received a phone call from a confidential informant who told Dickey that appellant was in Emancipation Park in Huntsville, sitting in a gray and maroon

Lincoln Continental with another black man selling crack cocaine. The informant also said that the men had an Uzi weapon in the car. Bush testified that he knew appellant and knew that appellant was involved with dealing crack. Dressed in civilian clothes, Bush went to Emancipation Park about 10:30 p.m. but could not find the Lincoln. He then parked his car and resumed his search on foot. Bush found appellant sitting behind the wheel of a black pickup truck. The driver's door to the truck was open and appellant was facing the interior of the truck with his hands down at his right side. There was a woman, Melinda Archie, sitting in the middle of the seat and her husband, Melvin Archie, was sitting on her right. As Bush approached the truck, he shined his flashlight into the car and instructed appellant to get out and "show him his hands." After several furtive gestures, appellant stepped out of the truck and showed Bush his empty hands. Bush instructed appellant to step away from the truck and reached into the truck to search the area where appellant had been sitting. Bush lifted a straw hat that was on the seat and found a plastic bag containing crack cocaine. There was testimony at trial that appellant had been seen previously wearing the hat. Bush then ordered the other two passengers from the truck, placed all three people under arrest, and radioed for assistance. A search of the area uncovered two match boxes and a plastic baggie, each containing crack cocaine, on the ground outside the passenger door of the truck. A chemist with the Department of Public Safety testified that the bag found under the hat contained 10.6 grams of 99% pure cocaine. No Uzi or weapon of any type was found in or around the truck.

■ In his first point of error, appellant argues that the trial court erred in denying his motion to suppress the crack cocaine as the fruit of an illegal search. Appellant contends that the information credited to Deputy Dickey's informant lacked a sufficient basis of reliability or credibility to authorize appellant's detention. The reasonableness of an investigative detention is reviewed based on the totality of the circumstances for each case. *United States v. Mendenhall,* 446 U.S. 544, 561, 100 S.Ct. 1870, 1880, 64 L.Ed.2d 497 (1980). Under the test, the informant's veracity and the basis of his knowledge are merely relevant considerations. *Rojas v. State,* 797 S.W.2d 41, 43 (Tex.Crim.App. 1990). Other factors that are present may compensate for any weaknesses in the informant's information thus yielding sufficient probable cause despite the weaknesses. *Id.* To analyze the reasonableness of a detention, this court should look to several factors: (1) the public interest served by the detention; (2) the severity of interference with individual liberty; and (3) the objective facts that the officer relied on in light of his knowledge and expertise. *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640–2641, 61 L.Ed.2d 357 (1979).

■ Police officers may briefly stop a suspicious individual to determine the person's identity or to maintain the status quo while obtaining more information. Occupants of automobiles are as subject to a brief detention as are pedestrians. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex. Crim.App.1983) (citing *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). Circumstances short of probable cause for arrest may justify a temporary investigative detention because narrowly tailored investigations are less intrusive upon personal liberty than arrests. *Schwartz v. State,* 635 S.W.2d 545, 546 (Tex.Crim.App.1982); *Davis v. State,* 794 S.W.2d 123, 124–25 (Tex.App.—Austin 1990, pet. ref'd.).

■ In order to justify such an intrusion, "an officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would warrant the intrusion on the person stopped for further investigation." *Schwartz,* 635 S.W.2d at 547. These specific articulable facts must create a reasonable suspicion in the officer's mind that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the de-

tained person with the unusual activity, and some indication that the activity is related to a crime." *Comer v. State*, 754 S.W.2d 656, 657 (Tex.Crim.App.1986) (quoting *Johnson v. State*, 658 S.W.2d at 626). When an officer is justified in believing a suspect is armed, the officer may take the necessary measures to determine whether the suspect is carrying a weapon and to neutralize the threat to the officer and others. *Davis*, 794 S.W.2d at 125 (citing *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968)). *See also Goodwin v. State*, 799 S.W.2d 719, 727 (Tex.Crim.App.1990). ·

Here, Deputy Bush was told by another officer that a known informant saw appellant in Emancipation Park in the city of Huntsville sitting in a certain model car with another black male dealing crack cocaine and allegedly possessing an Uzi. Initially, we note that the court of criminal appeals has authorized the use of "hearsay-upon-hearsay" in situations such as this. *See Hennessy v. State*, 660 S.W.2d 87, 91 (Tex.Crim.App.1983). Bush's subsequent investigation based on this information failed to turn up the identified automobile. However, Bush did find appellant sitting in the front seat of a pickup in the company of a black female and a black male. Bush testified that the truck was sitting in an area of the park that was not well lit and, when he approached the truck, he recognized appellant. Bush knew that appellant dealt in crack cocaine in the past and also knew that area of Huntsville had a well-known reputation as a location for drug dealing. Bush approached the vehicle without drawing his gun and shined the flashlight on appellant. He observed appellant making numerous furtive gestures between appellant's body and the woman sitting in the middle of the truck. Bush, concerned about the possibility of appellant having an automatic weapon, ordered appellant to get out of the truck and to show his hands. Bush needed to repeat his request several times while appellant continued to make furtive gestures, put his hands

behind his back, and "squirmed in his seat." Bush's testimony indicates a serious concern that appellant possessed a weapon. After appellant got out of the truck, Bush noticed the hat sitting on the seat next to the unknown female. Bush reached into the truck and moved the hat. The implication of the testimony reflects that at the time he moved the hat, Bush was still concerned about the possible presence of a weapon. Instead, Bush found the bag of crack cocaine.

■ Furtive gestures can be a valid indicia of mens rea when coupled with reliable information or other suspicious circumstances. *Smith v. State*, 542 S.W.2d 420, 421 (Tex.Crim.App.1976); *Evans v. State*, 799 S.W.2d 412, 415 (Tex.App.—Corpus Christi 1990, no pet.). Bush testified that appellant immediately recognized him as a law enforcement officer and then started making the furtive gestures. Appellant argues that Bush's information was unreliable because Bush did not find appellant in the identified vehicle and no weapon was recovered. The accuracy of the informant's information is, however, only a factor to be weighed when viewing the totality of the circumstances. *Rojas v. State*, 797 S.W.2d at 43. We find that Bush's personal knowledge of appellant and the reputation of Emancipation Park, coupled with appellant's obvious attempt to hide something from Bush before he could get closer, justifies the minimal intrusion that resulted when Bush reached into the truck and moved the hat. We also find that a valid public policy consideration impacts on Bush's actions in that there was information that an Uzi, an automatic weapon, may have been involved. Consequently, we hold that the trial court correctly denied appellant's motion to suppress.

■ Furthermore, we find that appellant lacks standing to contest the search. The court of criminal appeals has indicated that the State is entitled to raise the issue of standing for the first time on appeal.[1] *Wil-*

---

1. The basis of the trial court's ruling is not clear from the record. However, the judge stated:

"So you have the search of a vehicle not owned by Mr. Kelley. That gives Kelley no standing to

*son v. State,* 692 S.W.2d 661, 668–69 (Tex. Crim.App.1985) (op. on reh'g). We, as a reviewing court, "may properly sustain the trial court's ruling on the motion to suppress on the ground that the evidence failed to establish standing as a matter of law, *even* though the record reflects that the issue was never considered by the parties or the trial court." *Sutton v. State,* 711 S.W.2d 136, 138 (Tex.App.—Houston [14th Dist.] 1986, no pet.) (citing *Wilson v. State,* 692 S.W.2d at 671) (emphasis in original). A defendant has the burden of establishing a privacy interest in the place where the search or seizure occurred. *Wilson v. State,* 692 S.W.2d at 669. Thus, appellant had the burden of showing, as an element of his Fourth Amendment claim, that he had a reasonable expectation of privacy in the place where the police found the evidence. *Rakas v. Illinois,* 439 U.S. 128, 139–40, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1978); *Mejia v. State,* 761 S.W.2d 35, 37 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); *Curren v. State,* 656 S.W.2d 124, 127–28 (Tex.App.—San Antonio 1983, no pet.). This test specifically applies to prosecutions for possession of narcotics. *Rozell v. State,* 662 S.W.2d 634, 637 (Tex.App.—Houston [14th Dist.] 1983, no pet.) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)).

The evidence adduced at the motion to suppress and at trial showed that appellant was sitting in the driver's seat of a black pickup with the driver's door open. The engine was not running and the truck was owned by a friend of Melinda Archie's mother. Archie testified that she had invited appellant to sit in her vehicle. Appellant contends that the police were required to respect his privacy as an *occupant* of the vehicle. We disagree. We are not dealing with a situation where there was a bailment or appellant asserted any possessory interest in the vehicle. We merely have a person sitting in a vehicle that was borrowed by the person who had been driving it that night and the door was open.

Significantly, appellant does not challenge Bush's authority to approach the truck and make the initial "stop".

■ Simply because a person is a passenger in a car "with the permission of the owner is not determinative of whether they have a legitimate expectation of privacy." *Lewis v. State,* 664 S.W.2d 345, 347 (Tex. Crim.App.1984). Under the current state of Texas law, passengers in a vehicle have no legitimate expectation of privacy "where the passenger fails to assert a possessory interest in the vehicle or the property seized." *Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Crim.App.1985); *Harris v. State,* 713 S.W.2d 773, 775 (Tex.App.—Houston [1st Dist.] 1986, no pet.); *Johnson v. State,* 684 S.W.2d 129, 131 (Tex.App.—Houston [14th Dist.] 1984, no pet.).

■ Appellant did not testify at either the motion hearing or at trial and there is no evidence that appellant claimed an interest in either the truck or the cocaine seized. Indeed, appellant now argues that the evidence points to the possibility that Melinda Archie was actually selling the cocaine and not appellant. Mere occupancy in the vehicle, in and of itself, did not establish a legitimate expectation of privacy. Having failed to meet his burden of proving a possessory interest in either the vehicle or the evidence seized, we hold that appellant lacks standing to contest the search. *United States v. Salvucci,* 448 U.S. 83, 91–92, 100 S.Ct. 2547, 2552–2553, 65 L.Ed.2d 619 (1980) (citing *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)); *Meeks v. State,* 692 S.W.2d at 510. *See also Garces v. State,* 727 S.W.2d 48, 49 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). We overrule appellant's first point of error.

In his third point of error, appellant argues that the evidence was insufficient to support the accomplice witness testimony of Melinda Archie. Appellant contends that Mrs. Archie's testimony was not corroborated as required by TEX.CODE CRIM.

object." In any event, appellant does not dispute the State's right to assert this issue on appeal.

PROC.ANN. art. 38.14 (Vernon 1979), and that the State failed to provide any affirmative links to support his conviction for possession of cocaine. Mrs. Archie testified that appellant was counting out crack rocks on the seat and these were the gestures that Deputy Bush saw appellant making as Bush approached the truck.

When reviewing a sufficiency attack on accomplice witness testimony, the test is whether there is evidence tending to connect the defendant with the crime committed. *Reed v. State,* 744 S.W.2d 112, 125 n. 10 (Tex.Crim.App.1988); *Mitchell v. State,* 780 S.W.2d 862, 865 (Tex.App.— Houston [14th Dist.] 1989, no pet.). In applying this test, each case must be considered according to its own facts and circumstances. *Reed,* 744 S.W.2d at 126. Corroborative testimony may be circumstantial or direct and this court can look to incriminating evidence supplied by non-accomplice witnesses. *Id.* The corroboration does not have to link the accused to the crime directly or be sufficient, in itself, to establish guilt. *Id.; Naranjo v. State,* 745 S.W.2d 430, 433 (Tex.App.—Houston [14th Dist.] 1988, no pet.).

In addition to Mrs. Archie's testimony naming appellant as the person possessing and selling the cocaine, testimony by other witnesses provided the jury with other evidence of appellant's guilt. Deputy Bush testified that he saw appellant making furtive gestures as if he were trying to hide something. The crack cocaine was found on the seat of the truck next to appellant and under appellant's hat. Appellant argues that it was just as likely that Mrs. Archie was the drug dealer and that she placed the cocaine under the hat when Bush approached the truck. The jury, as the trier of fact, was free to accept one version of facts and to reject another. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). We find that the additional evidence sufficiently corroborated Mrs. Archie's testimony and that a rational trier of fact could have concluded that appellant possessed the cocaine. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.

1989). We overrule appellant's third point of error.

In his fourth point of error, appellant argues that the evidence was insufficient to sustain his conviction of possession with intent to deliver cocaine. The baggie found under appellant's hat contained 10.6 grams of crack cocaine. Appellant argues that this quantity could be used for merely personal consumption and that there was insufficient evidence to show his intent to deliver. However, Mrs. Archie testified that appellant was selling her the drugs. The jury was entitled to believe this testimony. *Penagraph,* 623 S.W.2d at 343. One of the officers involved in the subsequent investigation testified that, in his opinion, the cocaine was in sale quantity. There was sufficient evidence to sustain appellant's conviction for possession with intent to deliver. *Butler,* 769 S.W.2d at 239. We overrule appellant's fourth point of error.

In his fifth and sixth points of error, appellant argues that the trial court erred in allowing impeachment testimony showing that appellant was a co-defendant in another unrelated drug case. During direct examination of Joyce Mack, appellant's girlfriend, the following transpired:

MR. REGISTER (Defense Counsel): How do you know Elvis Kelley?

MS. MACK: By working for Sam Houston State University.

MR. REGISTER: Y'all work together?

MS. MACK: Right.

MR. REGISTER: Do y'all have any other relationship other than as co-employees?

MS. MACK: Yes.

MR. REGISTER: Tell the jury what that relationship is[.]

MS. MACK: He is my boyfriend.

The prosecution attempted to lay the predicate, outside the presence of the jury, for impeachment of the witness through an extraneous offense. The trial court allowed the prosecutor to pursue the line of questioning during cross-examination in front of the jury. The witness was impeached as follows:

MR. BLAZEK (Prosecutor): Ms. Mack, earlier you testified that your relationship with the defendant was solely that of co-workers at Sam Houston State University and boyfriend and girlfriend; isn't that correct?

MS. MACK: Correct.

MR. BLAZEK: Isn't it also true that you and he together are partners in an enterprise of manufacturing crack cocaine and distributing crack cocaine?

MS. MACK: No.

MR. BLAZEK: Isn't it true that you and he are co-defendants together—

MR. REGISTER: Judge, we're going to object to that. It's asking for the admissibility of an extraneous offense, and we object to it.

THE COURT: Overruled.

MR. BLAZEK: Isn't it true that you and the defendant, Ms. Mack, are co-defendants in a criminal case charged with possession of cocaine?

MR. REGISTER: Judge, Judge, may we approach the bench?

THE COURT: Yes.

The following discussion then occurred outside the presence of the jury:

MR. REGISTER: He has attempted to impeach her testimony through an arrest and not a conviction.

THE COURT: He is trying to show that they are in business and—

MR. REGISTER: Judge, they are bringing up extraneous offenses.

THE COURT: An accusation. They're accused together.

MR. REGISTER: That is an extraneous offense.

THE COURT: Overruled.

MR. REGISTER: We object to any questions inquiring about any extraneous offense wherein this witness and the defendant are co-defendants, in that it raises an extraneous offense in this case and is therefore highly prejudicial to a fair trial of this defendant.

THE COURT: Overruled, sir.

Ms. Mack's cross-examination then continued as follows:

MR. BLAZEK: Isn't it true, Ms. Mack, that you and the defendant, Elvis Kelley, are co-defendants in the charge of possession of cocaine from an offense arising on the date of February 13th, [sic] 1989?

MS. MACK: Yes.

MR. REGISTER: For the record, we again renew our objection and request that the jury be instructed to disregard the testimony elicited which constitutes an extraneous offense.

THE COURT: Overruled, sir.

MR. REGISTER: We also ask for a mistrial.

THE COURT: Overruled, sir.

The State contends that defense counsel's question inquiring into Ms. Mack's "other relationships" opened the door for further inquiry into Ms. Mack's *criminal* relationship with appellant in another pending drug case. The State also argues that the testimony was permissible to establish prejudice, interest, bias, or motive of the testifying witness.

■■■■■ The test for the admissibility of an extraneous offense or transaction is whether it is relevant to a material issue of the case and the probative value of the offense outweighs its inflammatory or prejudicial potential. *Alexander v. State*, 740 S.W.2d 749, 762 n. 6 (Tex.Crim.App.1987). The Texas Rules of Criminal Evidence require a final conviction for impeachment purposes. *See* TEX.CRIM.EVID. 609. However, the court of criminal appeals has stated that, in limited circumstances, "proof of the fact that charges have been filed *against a witness* may become admissible upon a showing that such evidence tends to establish prejudice, interest, bias or motive of the witness...." *Alexander*, 740 S.W.2d at 763 (quoting *Murphy v. State*, 587 S.W.2d 718, 722 (Tex.Crim.App.1979)) (emphasis added). The trial court has considerable discretion as to how bias is proven and as to what collateral evidence can be introduced for that purpose. *Gutierrez v. State*, 681 S.W.2d 698, 706 (Tex.App.— Houston [14th Dist.] 1984, pet. ref'd).

Ms. Mack, a defense witness, admitted not only that there were charges pending

818

against her, but also against appellant. Generally, "proof of a pending charge against a defense witness has no bearing on his motive to testify for an accused." *Alexander*, 740 S.W.2d at 763. Nevertheless, we can see that the trial court's discretion would have allowed the impeachment as to the *witness'* extraneous offense. However, the additional testimony that informed the jury that *appellant* was a co-indictee in the extraneous offense was inadmissible.

■■■■ Evidence of other unrelated offenses committed by a defendant is generally not admissible to avoid having the jury try a defendant for the collateral crime or convict on the basis for being a criminal generally. *Bachhofer v. State*, 633 S.W.2d 869, 870–71 (Tex.Crim.App.1982). Exceptions to the general rule allow admission of an extraneous offense when offered to establish identity of the person or crime, intent, motive, system, or part of the res gestae of the offense on trial. *Id.* at 871. Here, the alleged extraneous offense did not stem from the same transaction as the crime for which appellant was on trial. *See Smith v. State*, 516 S.W.2d 415 (Tex.Crim. App.1974). We find that the fact that appellant was arrested along with Ms. Mack on February 13, 1989 has no relevance to the events that transpired on the evening of August 16, 1989. We hold that the inherently prejudicial effect of the introduction of evidence showing the jury that appellant is under indictment in an unrelated drug offense materially outweighs the probative value of the evidence and constitutes reversible error. Consequently, we sustain appellant's fifth and sixth points of error.

In light of our disposition of appellant's fifth and sixth points, we decline to address his remaining allegations of error. We reverse the judgment of the trial court and remand the case for a new trial.

SEARS, Justice, concurring.

I concur in the results but dissent from the majority opinion which affirms the trial court's refusal to grant the motion to suppress. There is no evidence to show that appellant exercised any care, custody or control over the contraband. Further, except for the uncorroborated testimony of the co-conspirator, there is no evidence showing appellant had any knowledge of the existence of the contraband.

I would also sustain point of error number four. Without the uncorroborated testimony of the co-conspirator, there is *no evidence* of "intent to deliver."