NO. 07-03-0170-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 26, 2004



______________________________




TRINITY UNIVERSAL INSURANCE COMPANY, APPELLANT



V.



LILITH BRAINARD, ET AL., APPELLEES




_________________________________



FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;



NO. 31,677; HONORABLE STEVEN R. EMMERT, JUDGE



_______________________________




Before QUINN and REAVIS and CAMPBELL, JJ.



ON MOTION FOR REHEARING




 By our opinion of March 1, 2004, we reversed the judgment of the trial court
awarding Lilith Brainard, Sally Brainard Wicker, E. Swasey Brainard, II, Amy Brainard,
Berklee Brainard Clements, Sena Brainard, and the Estate of Edward H. Brainard, II
attorney's fees in the amount of $100,000, rendered judgment that no attorney's fees be
awarded, and in all other respects affirmed the judgment of the trial court denying the
Brainards any recovery for prejudgment interest.

 Having considered the Brainards' motion for rehearing, the motion for rehearing is
overruled for the reasons stated in the March 1, 2004 opinion, together with the reasons
set out by Justice Quinn in his opinion on rehearing. 

 

 Don H. Reavis

 Justice



Quinn, J., concurring.




NO. 07-03-0170-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 26, 2004



______________________________




TRINITY UNIVERSAL INSURANCE COMPANY,



 Appellant


v.



LILITH BRAINARD, ET AL., 



 Appellees


_________________________________



FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;



NO. 31,677; HON. STEVEN R. EMMERT, PRESIDING



_______________________________



ON MOTION FOR REHEARING



________________________________



Before QUINN, REAVIS and CAMPBELL, JJ.


 I write separately to address that aspect of the Brainards' motion for rehearing that
deals with the award of prejudgment interest. My interpretation of the record leads me to
conclude that the situation before us likens to that in Henson v. Southern Farm Bureau
Cas. Ins. Co., 17 S.W.3d 652 (Tex. 2000) as opposed to that in Menix v. Allstate Indem.
Co., 83 S.W.3d 877 (Tex. App.-Eastland 2002, pet. denied). In the former, the
complainant sought prejudgement interest arising from the supposed breach of contract
committed by Texas Farm Bureau, the company that issued the uninsured or under-insured policy. The Supreme Court held that such could not be recovered as part of
damages against Texas Farm Bureau because it was not obligated to pay any benefit until
judgment was entered against the under-insured tortfeasor. Henson v. Southern Farm
Bureau Cas. Ins., 17 S.W.3d at 654. The same was not true in Menix, however. There,
prejudgment interest was not sought as part of the recovery due as a result of any breach
by Allstate but as part of the damages committed by Swedlund, the under-insured
tortfeasor. And, because Allstate agreed, per its insurance policy, to pay Menix "'the
damages which a covered person is legally entitled to recover from the owner or operator
of an uninsured/underinsured motor vehicle because of bodily injuries,'" it had to pay
prejudgment interest that accrued upon the damages caused by Swedlund's conduct as
part of its contractual liability. 

 Thus, in comparing Henson and Menix, it is imperative to first determine whether
prejudgment interest is being sought from the insurer as damages resulting from the
insurer's own purported breach of contract or as part of the damages caused by the
uninsured or under-insured tortfeasor. And, given my reading of the Brainards' live
pleading, it appears as though prejudgment interest was sought as damages arising from
the purported contractual and statutory breaches committed by Trinity Universal Insurance
Co., not as a part of the damages caused by the under-insured's tort. Therefore, because
Menix is inapplicable while Henson is not, I vote to overrule the motion for rehearing. 


 Brian Quinn

 Justice



er, Johnson asked appellant to exit the car, told him that a drug dog
would soon arrive to conduct a search, asked if there was any contraband in the car,
explained that if contraband was found therein appellant could be implicated in the
offense, and stated that disclosing the presence of narcotics before the drug dog arrived
could be helpful. In response, appellant admitted that he had a "baggie" in his pocket. 
Johnson removed the "baggie," the contents of which were determined to be a controlled
substance.

 Application of Standard


 Unlawful Detention

 We initially address the contention that appellant's detention was unlawful. To the
extent that the officer witnessed Tucker run a red light, he had reasonable suspicion, if not
probable cause, to believe that a crime occurred; same also provided lawful basis to
conduct a traffic stop. See McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App.
1993) (stating that an officer may lawfully stop and detain a person for a traffic violation). 
Once Tucker was stopped, the officer was entitled to garner information about the
detainee's license, destination, and purpose of the trip without transgressing constitutional
or statutory limitation. Ortiz v. State, 930 S.W.2d 849, 856 (Tex. App.--Tyler 1996, no pet.)
(so holding). And, the information he garnered could be used in assessing the existence
of reasonable suspicion to continue the temporary detention. Id. Regarding that
information at bar, it consisted of 1) recognizing Tucker as the brother of an acquaintance,
2) remembering that Tucker's brother had stated that Tucker was a "heavy" drug user, 3)
remembering that Tucker's brother had stated that Tucker had been threatened by an
individual in El Paso over an event involving drugs, 4) discovering that Tucker was
returning from El Paso, 5) discovering Tucker's purpose for going to El Paso (i.e., to return
a car that he had rented in Lubbock while appellant followed him there in the vehicle in
which they would come back), 6) observing appellant's nervousness, rapid breathing, and
evasiveness, and 7) discovering that one or more of those in the car had been arrested
for drug offenses before. (4) To this we add the officer's conclusion that the reason given for
going to El Paso was dubious, since one did not normally return a rented car to a city
different from the one in which it was rented while having a friend drive another car down
to the point of return so they could come back in it. Collectively these indicia would permit
not only a police officer to reasonably suspect that Tucker and his companion had
engaged or were engaging in criminal activity involving drugs, but also detain them for
further investigation. See Powell v. State, 5 S.W.3d 369, 378-79 (Tex. App.-Texarkana
1999, pet. ref'd), cert. denied, 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000)
(recognizing that nervousness and the existence of prior drug offenses are factors used
in assessing the existence of reasonable suspicion to believe that crime is afoot); see also
Estrada v. State, 30 S.W.3d 599, 603 (Tex. App.-Austin 2000, pet. ref'd) (confusing and
contradictory stories are facts to be considered in forming a reasonable basis for
suspecting that the defendant was smuggling drugs). (5) At the very least, a decision of a
trial court so holding would not fall outside the zone of reasonable disagreement. And,
because of that, we cannot say that the trial court erred in refusing to conclude that either
the initial or continuing detention of Tucker and appellant was improper. 

 Consent

 Next, appellant argued that he did not give the officer consent to search his pockets
once he admitted possessing a baggie containing drugs. We reject the proposition. 
Simply put, an officer may search one's person when he has probable cause to believe
that the individual possesses contraband on his person. See e.g., Evans v. State, 799
S.W.2d 412, 414-15 (Tex. App.--Corpus Christi 1990, no pet.). He does not need consent
under those circumstances. And, it would not be outside the zone of reasonable
disagreement for a trial court to conclude that appellant's statement that he had a baggie
in his pocket (when he and the officer were discussing the presence of drugs) created
probable cause warranting a search of appellant's pocket.

 Appellant also suggested that his statement regarding the baggie was involuntary. 
This particular argument, however, is accompanied by no citation to analogous authority,
as required by Texas Rule of Appellate Procedure 38.1(h). Thus, it was waived. Yet, even
had it not, we would not find it persuasive. This is so because the evidence of record
illustrates that Johnson was simply explaining the possible legal consequences of
discovering drugs within a car in which he sat. That does not render any ensuing
response inadmissible. Freeman v. State, 723 S.W.2d 727, 730 (Tex. Crim. App. 1986)
(holding that a statement of the status of the case in terms of the facts and law is not a
coercive promise which taints the suspect's response). Nor is an officer's statement that
the detainee's cooperation may help the detainee sufficient to render inadmissible the
ensuing comments. Renfro v. State, 958 S.W.2d 880, 884 (Tex. App.--Texarkana 1997,
pet. ref'd). Finally, the video of the incident illustrated that 1) the show of force by Johnson
and his colleague was minimal, 2) Johnson spoke in a calm, formal tone, and 3) the lapse
of time between appellant exiting the car and ultimately admitting that he possessed the
baggie was a matter of a minute or two. That hardly evinced compulsion, especially when
the officer was simply asking about contraband in the car and not on appellant's person. 
See Smith v. State, 60 S.W.3d 885, 889 (Tex. App.--Amarillo 2001, no pet.) (stating that
the officer's interrogation must have some compelling effect before the response can be
deemed the result of coercion).

 Pat-Down

 Finally, appellant argues that Johnson's search of appellant's pocket was not a
lawful pat-down. This argument is of no import for the search conducted by Johnson was
not a pat-down. Instead, it was a search in response to the existence of probable cause.

 Accordingly, we affirm the judgment of trial court.

 

 Per Curiam


Publish.

 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann.
§75.002(a)(1) (Vernon Supp. 2002). 
2. The address on Tucker's driver's license was also incorrect.
3. We are unable to determine to whom the dispatcher referred. This is so because the audio portion
of the video containing the dialogue was unclear.
4. Appellant subsequently confirmed that he had been so arrested when he stated that he had been
granted deferred adjudication for a drug-related offense.
5. This is not to say that because Tucker and appellant were simply returning from El Paso the officer
had reasonable basis to suspect drug activity. That one may be traveling from or to a city which an officer
believes is a "source" for contraband carries little to no weight in assessing the existence of reasonable
suspicion or probable cause. Veal v. State, 28 S.W.3d 832, 837 (Tex. App.-Beaumont 2000 pet. ref'd);
Munera v. State, 965 S.W.2d 523, 529 (Tex. App.-Houston 1997, no pet.).