# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00225-CR

**Jimmy Lee Proa, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-17-0964, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After the trial court denied his motion to suppress evidence, a jury found appellant Jimmy Lee Proa guilty of unlawful possession of a firearm by a felon, a third-degree felony, possession of a controlled substance, cocaine, in an amount of four grams or more but less than 200 grams, a second-degree felony, and possession of a controlled substance, methamphetamine, in an amount of four grams or more but less than 200 grams, a second-degree felony. The State also alleged two enhancement paragraphs, which were found true. *See* Tex. Penal Code § 12.42(d). The trial court assessed punishment at 20 years' imprisonment for the count of unlawful possession of a firearm and 30 years' imprisonment for each count of possession of a controlled substance and ordered that the sentences run concurrently. In his sole appellate issue, Proa contends that the trial court erred in denying his motion to suppress. We will affirm the trial court's judgments of conviction.

## BACKGROUND

At the hearing on Proa's motion to suppress the results of a vehicle search in which officers found a firearm and controlled substances, the State presented two recorded 911 calls. In one recording, the caller reported hearing a gunshot in downtown San Marcos. In the second recording, a caller reported that a Hispanic male discharged a handgun from a "newer" white, four-door Chevy Silverado that was clean, like it had just been waxed. The caller also identified the truck's location and direction of travel. In the same recording, another caller described the incident, including the suspect's vehicle and location. Both of the callers in the second recording provided their names to the 911 dispatcher, and one also provided her telephone number.

Two police officers then testified at the hearing. The first officer testified that the 911 dispatchers described the suspect vehicle to her as "a newer model white Chevy pickup truck, Silverado, four-door. They described it as clean, like it had been waxed." The officer characterized this description as "pretty specific." She further testified that she spotted a truck matching the description "roughly about a mile" from "where the call was." According to the officer, the truck she spotted was "the only white newly waxed truck [she] saw in the area" during her search, which lasted about 25 minutes.

The second police officer testified that the alleged discharge of a firearm in a crowded place is "extremely dangerous" and requires "lots of officers to respond to assist with it." According to the officer, he stopped a truck matching the callers' description less than 30 minutes after the reported firearm discharge. In addition, the officer identified Proa in court as the truck's driver and described the search of the vehicle. The officer testified on cross-examination that he

2

would estimate the distance from the alleged shooting to where he stopped Proa's truck as about two miles, but he also later agreed that it would not "surprise" him if it were three and a half miles.

At the conclusion of the hearing, the trial court denied Proa's motion to suppress. Proa was later convicted and sentenced, and this appeal followed.

## APPLICABLE LAW AND STANDARD OF REVIEW

In his sole appellate issue, Proa contends that the trial court erred in denying his motion to suppress because officers violated his constitutional rights by stopping his vehicle without reasonable suspicion. "Reasonable suspicion to detain a person exists when a police officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (internal quotation marks omitted). At a suppression hearing, the State need not prove that the defendant committed a crime prior to the stop. *See Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011); *State v. Salas*, No. 03-16-00325-CR, 2018 WL 2437223, at *4 (Tex. App.—Austin May 31, 2018, no pet.) (mem. op., not designated for publication). Rather, the reasonable-suspicion standard "requires only some minimal level of objective justification for the stop." *Salas*, 2018 WL 2437223, at *4 (internal quotation marks omitted) (quoting *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012)).

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *See State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *Hernandez v. State*, No. 03-17-00793-CR, 2018 WL 3371390, at *1 (Tex. App.—Austin July 11, 2018, no pet.) (mem. op., not designated for publication). We view the record in the "light most favorable to the trial

3

court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Furthermore, appellate courts "use a bifurcated standard of review to evaluate whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Cortez*, 543 S.W.3d at 203. Courts apply this bifurcated standard by "giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015). Appellate courts must infer the necessary factual findings that support the trial court's ruling when, as here, the trial court does not make explicit findings of fact. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

## DISCUSSION

On appeal, Proa concedes that "Texas courts have often held that a citizen-informant's tip can be used to establish reasonable suspicion to make a traffic stop." He argues, however, that the descriptions of the vehicle that the 911 callers supplied here were too vague to support reasonable suspicion. Proa notes that the callers "did not give the police a license plate or partial number, any identifying marks such as a bumper sticker or point out [Proa's] vehicle prior to the stop." Proa also introduced evidence at the suppression hearing indicating that 1,465 white, four-door Chevy pickups were registered in Hays County. In addition, Proa argues that the officers lacked reasonable suspicion to detain him because some 30 minutes elapsed between the 911 calls and the traffic stop.

However, the record indicates that the callers informed the police that the shot was fired from a white, four-door Chevy Silverado that was a newer model and was clean, like it had just

4

been waxed. They also provided the police with the truck's location. Moreover, one of the officers testified that Proa's truck was "the only white newly waxed truck" that she saw during her search. According to the testimony, officers stopped Proa between one and three and a half miles from the site of the alleged firearm discharge.

Given that the officers' search was so limited in space and time, the details provided by the callers were sufficiently specific to exclude the vast majority of vehicles that the officers encountered. Additionally, the officers received the details through unsolicited calls from concerned citizens who provided their identities to the police. *See State v. Nelson*, 228 S.W.3d 899, 903 (Tex. App.—Austin 2007, no pet.) ("Unsolicited information regarding a crime in progress provided by a citizen who has no relationship with the police and who makes herself accountable by providing contact information is inherently reliable."); *see also Sawyer v. State*, No. 03-07-00450-CR, 2009 WL 722256, at *4 (Tex. App.—Austin Mar. 19, 2009, no pet.) (mem. op., not designated for publication) (noting that vehicle description provided by citizen informant need not include license plate number to be reliable). Further, we are not persuaded by the argument that the 20 or 30 minutes that elapsed between the 911 calls and the traffic stop made the stop unreasonable. *See Johnson v. State*, 444 S.W.3d 209, 214 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding officer had reasonable suspicion to detain the defendant when the officer "was responding to a 30-minute-old 911 call"); *Evans v. State*, 799 S.W.2d 412, 414 (Tex. App.—Corpus Christi 1990, no pet.) (concluding that reasonable suspicion did not "evaporate[]" during 45 minutes between phone call and search, especially because officers apprehended suspect within "close proximity").

Viewing the totality of the circumstances in the record before us in the light most favorable to the trial court's ruling, including the seriousness of the offense the officers were

5

investigating, the specificity of the callers' descriptions, and the proximity in time and space of the traffic stop to the alleged offense, we conclude that the State presented at the least "some minimal level of objective justification for the stop," *Salas*, 2018 WL 2437223, at *4 (internal quotation marks omitted), and that the trial court did not err in concluding the officers had reasonable suspicion to stop Proa's vehicle. Because the trial court's denial of Proa's motion to suppress was not "outside the zone of reasonable disagreement," *Dixon*, 206 S.W.3d at 590, we cannot conclude that the trial court abused its discretion in denying Proa's motion to suppress, and we overrule his sole appellate issue.

## CONCLUSION

We affirm the trial court's judgments of conviction.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed

Filed: March 5, 2019

Do Not Publish