Opinion issued June 23, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00766-CR

———————————

Shaun Hernandez, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 230th District Court 

Harris County, Texas



Trial Court Case No. 1156617

 



 

MEMORANDUM OPINION

          After
the trial court denied his motion to suppress evidence, appellant, Shaun
Hernandez, with an agreed punishment recommendation from the State, pleaded
guilty to the offense of possession of a controlled substance weighing more
than four grams and less than four hundred grams.[1]  In accordance with the plea agreement, the
trial court sentenced appellant to confinement for three years.  In his sole issue, appellant contends that
the trial court erred in denying his motion to suppress evidence on the ground
that the arresting officers did not have reasonable suspicion to detain him.[2]  

          We
affirm.

Background

At the hearing on appellant’s motion to suppress evidence,
Houston Police Department (“HPD”) Officer R. Tagle testified that on March 4,
2008, while on patrol, he and HPD Officer D. Morelli saw appellant “walking in
the middle of the roadway impeding traffic flow” on Davis Street.  He explained that from his experience he knew
“that this specific area is heav[ily] impacted by gang-type and drug-type
issues and members.”  After watching
appellant walking in the middle of the street for approximately one to two
minutes, the officers approached him because he had committed a “law
violation,” i.e., “walking in the middle of the roadway impeding traffic
flow.”  The officers “initiated a
conversation” with appellant, and Tagle asked him for photographic
identification, which appellant then provided. 
After the officers asked appellant if he had anything illegal in his
possession that they needed to know about, appellant responded, “Oh, fuck. I
have X.”  The officers then asked
appellant for his consent to search his person, and appellant agreed.  The officers had appellant place his hands on
the hood of their patrol car, and they found twenty ecstasy pills in
appellant’s front pocket and arrested him. 


Officer Morelli testified that on March 4, 2008, while on
patrol with Officer Tagle, he saw appellant commit a “law violation” by walking
in the middle of the roadway.  Morelli
noted that the street did not have sidewalks, but there was “open space” off
the roadway to walk.  After the officers
pulled up next to appellant and asked for his identification, appellant “was
kind of evasive on answering the questions” and “stuttering.”  Morelli noted that there was “something wrong
with [appellant], something [was] not right,” and he seemed “nervous.”  After the officers asked appellant whether he
had any narcotics in his possession, appellant stated that he had ecstasy.  Morelli asked appellant for his consent to a
search, and appellant agreed.  Morelli
then recovered the ecstasy pills from appellant.  Morelli noted that the traffic on Davis
Street was a “little heavy” and cars had to go “around” appellant in the street
because he was “blocking traffic pretty much.” 


Appellant testified that on March 4, 2008, he was walking
down Davis Street at approximately 10:00 p.m. when a police car pulled up next
to him and the officers turned a spotlight on him.  Appellant explained that he was walking on
the left side of the road, which was approximately twelve to fifteen feet wide.  Appellant was facing on-coming traffic, and
there was a car parked on the right side of the road that occupied “nearly the
entire lane of traffic.”  The officers
asked for appellant’s identification and whether he had been previously
arrested.  Appellant provided the
officers with his identification and, in response to the officers questioning, told
them that he had been previously arressted for possession of a controlled
substance.  The officers then exited
their car, asked appellant to put his hands on the hood of the car, and
proceeded to search him.  Appellant explained
that he did not make any comments to the officers, did not admit to having
anything on his person, and did not consent to the officers’ search.  Appellant noted that he did not recall any
cars passing him as he was walking down the street.  

Standard of Review

In reviewing a trial court’s ruling on a motion to suppress
evidence, we apply a bifurcated standard of review.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  We give almost total deference to the trial
court’s determinations on all fact questions and on application-of-law-to-fact
questions[3]
that turn on an evaluation of credibility and demeanor.  Johnson
v. State, 68 S.W.3d 644, 652 (Tex. Crim. App. 2002).  We view the record and all reasonable
inferences from the record in the light most favorable to the trial court’s
ruling and sustain the ruling if it is reasonably supported by the record and
is correct under any theory of law applicable to the case.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  However,
the trial court is the sole and exclusive trier of fact and judge of the
witnesses’ credibility.  Maxwell v. State, 73
S.W.3d 278, 281 (Tex.
Crim. App. 2002).  Accordingly, the trial court may choose to
believe or to disbelieve all or any part of the witnesses’ testimony.  State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000).  When, as here, the parties do not request, and
the trial court does not make, findings of fact and conclusions of law, we view
the evidence in the light most favorable to the trial court’s ruling and assume
that the trial court made implicit findings of fact that support its ruling as
long as those findings are supported by the record.  Id.  

Warrantless Search

In his sole issue, appellant argues that the trial court
erred in denying his motion to suppress evidence because the officers did not
have reasonable suspicion that he had “committed or was about to commit an
offense before stopping him” and then proceeded to perform a warrantless search
and “an unlawful, warrantless arrest.”  See Tex. Const. art.
I, § 9; Tex. Code Crim. Proc. Ann.
arts. 1.06, 38.23 (Vernon Supp. 2010). 

Article I, section 9 of the Texas Constitution protects
against unreasonable searches and seizures. 
Atkins v. State, 882 S.W.2d
910, 912 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).  However, not every encounter between police
officers and citizens implicates constitutional protections.  Hunter
v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (citing Florida v. Bostick, 501 U.S. 429, 434,
111 S. Ct. 2382, 2386 (1991)).  There are three distinct categories of
interactions between police officers and citizens: encounters, investigative
detentions, and arrests.  Crain v. State, 315 S.W.3d 43, 49 (Tex.
Crim. App. 2010); State v. Perez, 85
S.W.3d 817, 819 (Tex. Crim. App. 2002). 
In determining which category an interaction falls into, courts look at
the totality of the circumstances.  Crain, 315 S.W.3d at 49.  

Investigative Detention

The State
asserts that the officers engaged appellant in a consensual encounter when they
approached him, requested his identification, and asked whether he had anything
illegal in his possession.  Appellant asserts
that the encounter was not consensual, but an investigative detention.  

An encounter is a
consensual question-and-answer interaction between a citizen and a police
officer in a public place that does not require reasonable suspicion and does
not implicate constitutional rights.  See
Florida v. Royer, 460 U.S. 491,
497–98, 103 S. Ct. 1319, 1323–24 (1983); Perez, 85 S.W.3d at 819.  An encounter is usually a friendly
exchange of pleasantries or mutually useful information.  Gaines
v. State, 99 S.W.3d 660, 666 (Tex. App.—Houston [14th Dist.] 2003, no
pet.).  The encounter should be
considered consensual as “long as a reasonable person would feel free ‘to
disregard the police and go about his business.’”  Hunter,
955 S.W.2d at 104 (quoting Bostick,
501 U.S. at 434, 111 S. Ct. at 2386).  In
Hunter, the Texas Court of Criminal
Appeals explained that “[a] police officer’s asking questions and requesting
consent to search do not alone render an encounter a detention.”  955 S.W.2d at 106.  Only when an officer conveys a message that
compliance is required does a consensual encounter become a detention.  Id.

An investigative
detention occurs when an individual is encountered by a police officer, yields
to the officer’s display of authority, and is temporarily detained for purposes
of an investigation.  Johnson v. State, 912
S.W.2d 227, 235 (Tex. Crim. App. 1995).  A person “yields to an officer’s display of
authority” when a reasonable person would not feel free to continue walking or
otherwise terminate the encounter.  Bostick, 501 U.S. at 436, 111 S. Ct. at 2387; State v. Velasquez, 994 S.W.2d 676, 679 (Tex.
Crim. App. 1999); Johnson, 912 S.W.2d at 234–35.
 An investigative detention is
constitutionally permissible if, under the totality of the circumstances, an
officer has reasonable suspicion supported by articulable facts that the person
detained is, has been, or soon will be engaged in criminal activity.[4]  Terry v. Ohio, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880
(1968); Ford v. State, 158 S.W.3d 488, 492–93
(Tex. Crim. App. 2005).  

Here, after observing appellant walking in the middle of the
roadway, the officers pulled up next to appellant and activated their patrol
car’s overhead light.  The officers
explained that they had stopped appellant because he was committing a “law
violation.”  The officers then asked
appellant for his identification and took possession of his identification
card.  This caused appellant to yield to
the officers’ show of authority.  See Velasquez, 994 S.W.2d at 679.  Both officers were in uniform and a marked
patrol car.  They pulled up beside
appellant after seeing him commit a “law violation,” identified themselves as
police officers, began asking appellant questions, and then exited their patrol
car and continued questioning appellant. 
Under these circumstances a reasonable person would not believe that he
was free to leave or decline the officers’ requests.  Accordingly, we conclude that the initial
contact between appellant and the officers was not an encounter, but an
investigative detention requiring reasonable suspicion.  See
Johnson, 912 S.W.2d at 235.

Appellant asserts that the officers stopped him without a
reasonable suspicion that he had committed or was about to commit a law
violation and an unlawful, warrantless arrest occurred “at the point he was
made to place his hands on the patrol car by the officer.”  He notes that the only evidence the officers
had, “which could have constituted probable cause to arrest” him, “was the
allegation that [he] was impeding traffic.” 
He asserts, however, that this contention is not supported by the
evidence presented at the suppression hearing. 


In order to stop or briefly detain an individual, an officer
must be able to articulate something more than an “inchoate and unparticularized
suspicion or ‘hunch.’”  Terry, 392 U.S. at 27, 88 S. Ct. at
1883; Guevara v. State, 6 S.W.3d 759, 763
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).
 Reasonable suspicion exists when the
officer has some minimal level of objective justification for making the stop,
i.e., when the officer can “point to specific and articulable facts which,
taken together with rational inferences from those facts, reasonably warrant
[the] intrusion.”  Terry, 392 U.S. at 21, 88 S. Ct. at
1880; Woods v. State, 956 S.W.2d 33, 38
(Tex. Crim. App. 1997); see also Alabama v. White, 496 U.S. 325, 329–30, 110 S.
Ct. 2412, 2416 (1990).  Whether
reasonable suspicion exists is determined by considering the facts known to the
officer at the moment of detention.  Davis v. State, 947
S.W.2d 240, 243 (Tex. Crim. App. 1997).  We disregard the subjective belief of
the officer in our reasonable suspicion analysis and consider the totality of
the circumstances objectively.  Ford, 158 S.W.3d at 492–93.  

Investigative detentions become unreasonable when they are
not reasonably related in scope to the circumstances that justified the
interference in the first place.  Davis, 947 S.W.2d
at 244.  Thus, an
investigative detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop and, once the reason for the detention
has been satisfied, the detention may not be used as a “fishing expedition for
unrelated criminal activity.”  Id. at 243.  

Here, the officers
stopped appellant after they saw him “walking in the middle of the roadway”[5]
and “impeding traffic.”  Officer Tagle
specifically stated that he saw appellant, for one or two minutes, “walking in
the middle of the roadway impeding traffic flow.”  Officer Morelli further testified that he saw
several cars go around appellant before the officers approached him.  Although appellant testified that he was actually
walking on the left side of the roadway, facing oncoming traffic, the officers
testified that appellant was walking in the “middle” of the roadway.  The trial court was the sole judge of
credibility and could have believed the officers’ version of the facts and
disbelieved appellant’s version.  Stephenson v. State, 494 S.W.2d 900, 904
(Tex. Crim. App. 1973); Lopez v. State,
663 S.W.2d 587, 591 (Tex. App.—Houston [1st Dist.] 1983, pet. ref’d); Burton v. State, No. 01-93-00208-CR, 1994 WL 45950, at *2 (Tex. App.—Houston [1st
Dist.] Feb. 17, 1994, no pet.) (not designated for publication) (concluding
that it was trial court’s prerogative to believe officer’s testimony that
appellant was in middle of street and walking with traffic rather than
appellant’s testimony that he was walking facing traffic).  Thus, the trial court
could have reasonably concluded that the officers’ observations of appellant
walking in the “middle” of the roadway and impeding traffic was sufficient to
justify their stop of appellant based on their reasonable suspicion that he had
committed a violation of the law.  

Probable Cause

Appellant asserts that the officers did not have sufficient
probable cause to search him and place him under arrest and an unlawful,
warrantless arrest occurred “at the point he was made to place his hands on the
patrol car by the officer.”  He further
asserts that the only evidence the officers had “which could have constituted
probable cause to arrest [him] . . . was the allegation that [he] was impeding
traffic.”  

An officer may search
an individual when he has probable cause to believe that the individual
possesses contraband on his person.  Nuttall
v. State, 87 S.W.3d 219, 223 (Tex. App.—Amarillo 2002, no pet.); see,
e.g., Evans v. State,
799 S.W.2d 412, 414–15 (Tex. App.—Corpus Christi 1990, no pet.).  Here, after stopping appellant for walking in
the middle of the roadway, Officer Morelli asked appellant if he had anything
dangerous on him that the officers needed to know about.  Appellant then said, “Oh, fuck.  I have X.” 
At the point that appellant admitted to being in possession of
narcotics, the officers had probable cause to search him.  Id.  The search of appellant was not a pat-down
search made pursuant to the officers’ investigative detention; rather it was
made based upon probable cause that appellant was in possession of narcotics.  Simply put, during the initial investigative
detention, appellant’s admission that he had narcotics in his possession gave
the officers probable cause to search and then arrest appellant.  See Houston v. State, No. 03-99-00588-CR, 2000 WL 962828,
at *2 (Tex. App.—Austin July 13, 2000, no pet.) (not designated for
publication).

Appellant asserts
that he did not make a statement to the officers concerning his possession of
narcotics.  However, the two police
officers testified that appellant admitted that he was in possession of ecstasy
and consented to the search.  See Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973) (“[O]ne of
the specifically established exceptions to the requirements of both a warrant
and probable cause is a search that is conducted pursuant to consent.”); Carmouche,
10 S.W.3d at 331 (“Consent to search is one of the well-established exceptions
to the constitutional requirements of both a warrant and probable cause.”).  Again, we note that the trial court is
the sole and exclusive trier of fact and the sole judge of the credibility of
witnesses, including the weight to be given to their testimony.  See
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  Given the conflicting evidence, it was up to
the trial court to weigh the credibility of the witnesses.  Accordingly, the trial court was free to believe
the officers’ rendition of the facts and disbelieve appellant’s.  We hold that the trial
court did not abuse its discretion in denying appellant’s motion to suppress
evidence.  

We overrule appellant’s sole issue.  

Conclusion

We affirm the judgment of the trial
court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, and Massengale.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Health & Safety Code Ann. §
481.101 (Vernon 2010).  

 





[2]           See
U.S. Const. amend. IV; see also Tex. Const. art. I, § 9.





[3]
          These are also referred to as
“mixed questions of law and fact.”  Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). 

 





[4]
          Texas courts follow the federal Terry standard with respect to temporary
investigative detentions, and the Texas Court of Criminal Appeals has found no
reason to employ a more stringent standard under the Texas Constitution with
respect to such detentions.  Davis v. State, 829 S.W.2d 218, 219
(Tex. Crim. App. 1992).  





[5]
          Neither party presented
testimony regarding the specific statute that appellant is alleged to have
initially violated.  The officers
testified only that appellant committed a “law violation” by “walking in the
middle of the roadway” and “impeding traffic.” 
However, the Texas Transportation Code provides, “If a sidewalk is not
provided, a pedestrian walking along and on a highway shall if possible walk
on: (1) the left side of the roadway; or (2) the shoulder of the highway facing
oncoming traffic.”  Tex. Transp. Code Ann. § 552.006(b)
(Vernon 2011).  A peace officer may
arrest without a warrant a person found committing a violation of the
transportation code.  Id. § 543.001 (Vernon 2011).