NO. 07-01-0018-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 26, 2001

_____

JIMMIE LADALE SMITH,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 98-05-4670; HON. ANDY KUPPER, PRESIDING

_____

Before QUINN, REAVIS and JOHNSON, JJ.

Jimmie Ladale Smith (appellant) appeals his conviction for aggravated sexual assault. Through three issues, he contends that 1) the trial court erred by admitting into evidence a statement given by appellant in violation of the Texas Code of Criminal Procedure, 2) the trial court erred by failing to charge the jury on lesser included offenses and 3) the evidence was legally and factually insufficient to support his conviction. For reasons stated below, we affirm the judgment.

## *Background*

Appellant, during the early morning hours of April 30, 1998, entered a convenience store in Levelland, Texas. Linda Collum (Collum) was working as a clerk that evening. Another person, a female, was in the store at the time appellant entered and solicited a ride. The female agreed to provide him one, and the two individuals left. However, appellant returned approximately 30 minutes later. As Collum was walking past appellant, he grabbed her by the front of her shirt, told her to get down on the floor, and pushed her straight back. She landed on her back as her glasses flew off and hit the ground. Appellant again grabbed Collum, this time by the arm and pushed her down. Though Collum told him that there was money in the register, appellant responded that he had money and did not need any. At that point, according to Collum, she became afraid that appellant was going to try to harm her. Collum began to twist away from appellant as he tried to pull her back. During this struggle, Collum activated an alarm on a chain that she had worn around her neck.

Upon seeing Collum push the alarm button, appellant began to drag her through the storeroom doors which were propped open. He kicked the door shut and continued to drag her into the storeroom. As Collum lay on her back, appellant "grabbed [her] legs and the waistband of [her] slacks." Collum began pleading with appellant to not hurt her since she was an old woman and a grandmother. This did not dissuade him, however, for he continued to pull at her waistband until the button popped off. Then he succeeded in pulling down her pants and underpants. At that point, "he undid himself," "tried to

2

penetrate [her] and could not." Collum was then directed to get back up and clothe herself. Thereafter, he forced her through the storeroom doors with his fist in her back.

As Collum "cowered in a corner," "shaking," appellant began asking her about the purpose of the button she had pushed and wanted to know if it activated a camera. He then poked at the ceilings with a dust mop looking for the cameras and knocked down a domed mirror which shattered into pieces. Collum was told to sweep up the mess, which she did. Eventually, a couple of customers entered the store. Appellant advised Collum to "act natural or somebody is going to get hurt." As she waited on the customers, Collum silently mouthed a message to one of them to call the police. Once the customers left, appellant grabbed and forced her into the office, threw her on the desk, pulled her shoe off and pants down, and penetrated her with his penis. At that point, the police entered the store and apprehended appellant. So too did Collum tell them that she had been raped.

Subsequently, Officer Cobb (Cobb) arrived to transport appellant to the police station. While Cobb was receiving instructions at the store, appellant repeatedly asked if he could explain what occurred. He told the officer that he wanted to explain "what's going on and . . . tell [him] what happened." Cobb told appellant "[he] didn't want to hear anything from him and not to tell [him] anything." Nevertheless, as appellant was being transported to jail, and after he received his Miranda warnings, Cobb told him "you can talk all you want." According to the officer, the following was said by appellant:

> my girl- - my girl and her friend were up there, and they were flirting with me
> . . . I gave her friend some money to give me a ride . . . and then we just
> started having sex . . . oh man . . . oh, man . . . .

3

Later, appellant gave a written statement to the police wherein he contended that after he walked back to the store, he and the clerk started talking. He stated that their conversation turned to the subject of sex when the two customers came in. After they left, appellant and the clerk went to the back of the store. He began kissing on her, and they were about to have sex when the police arrived.

### Issue One - Custodial Interrogation

Via his first issue, appellant contends that the admission of his oral statement to the police officer was error because the statement was obtained through violation of article 38.22 of the Texas Code of Criminal Procedure. We disagree and overrule the issue.

Generally, article 38.22 precludes the use of statements arising from custodial interrogation and obtained without complying with various procedural safeguards mentioned therein. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon Supp. 2001); *Galloway v. State*, 778 S.W.2d 110, 112 (Tex. App.--Houston [14th Dist.] 1989, no pet.); *see Shiflet v. State*, 732 S.W.2d 622 (Tex. Crim. App.1985). However, it does not bar the admission of statements which do not "stem from custodial interrogation," statements which are "res gestae of the arrest or the offense," and all voluntary statements, whether or not they result from custodial interrogation. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5; *Shiflet v. State*, 732 S.W.2d at 623; *Galloway v. State*, 778 S.W.2d at 112. While no one disputes that appellant was in custody when he uttered the aforementioned comments to Officer Cobb, question arises as to whether the utterance was the result of an interrogation. We hold that it was not.

4

Specifically, "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis,* 446 U.S. 291, 300-301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980); *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App.1990). Yet, not all interaction between the police and an arrestee constitutes interrogation for there must be an element of coercion or compulsion in the words communicated by the law enforcement officials. Indeed, the Texas Court of Criminal Appeals recently confirmed this in *Griffith v. State,* No. 1957-98 (Tex. Crim. App. Sept. 19, 2001). There, the court had before it the question of whether Griffith was being interrogated. In addressing the issue, the court opined that for interrogation to occur, there must exist "a measure of compulsion above and beyond that inherent in custody itself." *Id.* That is, the conduct undertaken by the supposed interrogator must reflect effort to obtain information through some measure of compulsion distinct from any compulsive effect inherent in being placed in custody. If no such compulsion, direct or indirect, occurred then the utterance did not arise from interrogation. *See Rhode Island v. Innis,* 446 U.S. at 300 n. 4, 100 S.Ct. at 1689 n. 4, 64 L.Ed.2d 297 (reiterating that any statement given freely and voluntarily *without any compelling influences* is admissible in evidence) (Emphasis added.) So, in effect, for a comment to be the result of custodial interrogation, the words or actions utilized by the police must not only be of the ilk which the officer should know are reasonably likely to elicit an incriminating response but also have some compulsive effect.

5

At bar, the record reflects that from the time Cobb arrived at the scene and he and appellant left, appellant repeatedly attempted to explain to the officer what happened. Furthermore, when appellant did so, his endeavor was utterly unilateral as opposed to a response to acts of any investigating officers. Indeed, Cobb expressly advised him to remain silent. Moreover, in addressing appellant after he was in the process of being transported from the scene, Cobb merely invited appellant to talk if he cared to. The officer directed no questions to him. Nor did he utter any commands in an effort to cause appellant to speak. Cobb merely told appellant he could say that which appellant had been endeavoring to say *sua sponte* since the two first encountered each other at the scene of the crime. And, given the lack of compulsion, direct or indirect, on the part of Cobb, we cannot say that appellant's utterance emanated from any means of interrogation as contemplated by article 38.22 of the Texas Code of Criminal Procedure. Thus, the trial court was not obligated to exclude it.

### Issue Two - Lesser Included in the Jury Charge

Next, appellant complains that the trial court erred by failing to instruct the jury on the alleged lesser-included offenses of attempted aggravated sexual assault and attempted sexual assault. We again disagree and overrule the issue.

The evidence that appellant believes entitled him to an instruction on the lesser included offenses consisted of his statement that he and Collum began discussing sex, the two went to a back room, and he began "kissing on" her, and the police arrived before the two engaged in sex. Interpreting this evidence within its context as we must, *Means v. State,* 955 S.W.2d 686, 692 (Tex. App – Amarillo 1997, pet. ref'd., untimely filed), it can

6

only be construed as suggesting that appellant and Collum were preparing to engage in *consensual sex*. "Consent is a defensive theory which vitiates sexual assault." *McGahey v. State,* 744 S.W.2d 695, 697 (Tex. App. – Fort Worth 1988, pet. ref'd.). That is, it was an attempt to deny the commission of sexual assault. And, because it evinces an attempt to deny the commission of the crime, the evidence is not of the ilk which would entitle one to an instruction on any lesser included offense. *Valdez v. State*, 993 S.W.2d 340, 344 (Tex. App. – El Paso 1999, pet. filed); *Garcia v. State*, 630 S.W.2d 914, 919 (Tex. App. – Amarillo 1982, no pet.). Moreover, our independent review of the other evidence of record failed to uncover evidence which would have entitled appellant to the instruction. *See Valdez*, 993 S.W.2d at 344.

### *Issue Three - Sufficiency of the Evidence*

In his third and final issue, appellant challenges the legal and factual sufficiency of the evidence. Specifically, appellant contends that the evidence was not legally sufficient to support a finding that appellant had "threatened and placed [] Collum in fear of death or serious bodily injury." Furthermore, appellant claims that the evidence was factually insufficient to support a finding of 1) "a threat of death or serious bodily injury" to Collum and 2) "penetration of []Collum's female sexual organ by [] appellant's male sexual organ. . . ." We again disagree and overrule the contention.

The standards of review applicable to questions of legal and factual sufficiency are well-settled and need no explanation. We find it adequate to merely cite the parties to *King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000) and *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). Next, to secure a conviction for aggravated sexual assault, the

7

State must prove beyond reasonable doubt that the accused 1) intentionally or knowingly caused the penetration of the anus or female sexual organ of another person by any means, without that person's consent and 2) by acts or words places the victim in fear that death, serious bodily injury, or kidnaping will be imminently inflicted on any person. *See* TEX. PEN. CODE ANN. §22.021(a)(1)(A)(i) and (a)(2)(A)(ii) (Vernon Supp. 2001).

As to the alleged want of evidence regarding a threat of death or seriously bodily injury, we find of record evidence that appellant 1) grabbed Collum, 2) pushed her to the floor, 3) caused her glasses to be knocked off, 4) drug her through the store, 5) forcefully removed her clothes, 6) pushed her with his fist, 7) told her to act naturally or someone would get hurt when customers entered the store, 8) threw her on a desk, 9) penetrated her, and 10) caused bruises on her person. So too do we have testimony from Collum illustrating that she 1) was afraid appellant would hurt her and 2) cowered and shook during the encounter. From this, a jury could rationally conclude beyond reasonable doubt that appellant committed aggravated sexual assault by causing Collum to fear serious bodily injury or death. See TEX. PEN. CODE ANN. § 22.021 (Vernon Supp. 2001) (stating the elements and punishment range for aggravated sexual assault). Moreover, when tested against the entire record, the finding would not be manifestly unjust or clearly wrong. So, the verdict enjoyed the support of both legally and factually sufficient evidence.

As to the contention that the evidence was factually insufficient to establish penetration by appellant, we have his own oral statement wherein he admitted to having sex with her. One can reasonably infer that to have sex, there is penetration of the female sex organ. So too do we have Collum's own testimony that he penetrated her and that she

8

had been "raped." Admittedly, the jury was free to discredit each statement. Yet, to the extent that it found appellant guilty, it obviously did not. And, in crediting that testimony and finding penetration, we cannot say that the jury's verdict was clearly wrong or manifestly unjust.

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


Brian Quinn
Justice

Publish.