

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00376-CR

_____

AARON TYRONE BLACKMORE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from Criminal District Court Number 2
Tarrant County, Texas
Trial Court No. 1838642, Honorable Lee Gabriel, Presiding[1]

March 5, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant was convicted by a jury of aggravated assault with a deadly weapon, to-wit: a knife, enhanced by a prior felony conviction.[2] The jury assessed punishment at confinement for forty years. Presenting six issues, Appellant

---

[1] This cause was originally filed in the Second Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] TEX. PENAL CODE § 22.02(a)(2).

asserts error by the trial court as follows: (1) violation of his Sixth Amendment right in admitting non-testifying witness statements at the article 38.49 hearing because the State did not prove forfeiture by wrongdoing; (2) in admitting statements produced by a two-step interrogation in violation of his *Miranda* and Sixth Amendment rights; (3) in admitting the Victim Impact Statement which was not authenticated and violated his Sixth Amendment right to confront his accusers; (4) in admitting State's Exhibits 1, 3, and 11 depicting unauthenticated statements of jail tablet messages during the punishment phase; (5) in admitting State's Exhibits 1, 3, and 11 during punishment under the exception of furtherance of a conspiracy; and (6) in admitting evidence of an extraneous offense without complying with the notice requirements of article 37.07, section 3g of the Texas Code of Criminal Procedure. We affirm.

## BACKGROUND

The complainant claimed she and Appellant have been friends since seventh grade. In the early morning hours of October 15, 2022, she called 911 to report Appellant had threatened to kill her and her four-year-old daughter with two knives.[3] During the call, Appellant was overheard swearing at the complainant and threatening to kill her. A young child was also heard crying. The complainant told the 911 operator Appellant left the house during the call and described his appearance and clothing so he could be apprehended.

---

[3] Appellant was indicted in a second count for aggravated assault against the child but was acquitted by the jury.

2

One of the officers responding to the call observed Appellant and reported his location to other officers who apprehended him. Appellant was handcuffed and placed inside a patrol vehicle. An officer drove to the complainant's location to interview her. She told the officer Appellant had threatened her and her daughter with two knives, one of which was found in a bedroom in the house.[4] The complainant, her niece, and sister all provided similar written statements to police.

The officer who first made contact with Appellant after his apprehension informed him he was being detained at that time. However, after the complainant's interview, the interviewing officer reported there was "a good offense" on which to arrest Appellant. He was arrested for aggravated assault, searched, and transported to jail.

Two days after the arrest, the complainant signed a Victim Impact Statement describing the incident. She claimed Appellant had people calling her to intimidate her into dropping the charges.

Almost two years later, the complainant filed an Affidavit of Non-Prosecution indicating she did not want to pursue charges against Appellant and did not wish to testify. Less than a week later and just prior to commencement of the trial, the trial court held a pretrial hearing in which the State was seeking to have the complainant's statements to police admitted under article 38.49 of the Code of Criminal Procedure entitled "Forfeiture by Wrongdoing." The State alleged the complainant was no longer cooperating due to wrongdoing by Appellant. At the conclusion of the hearing, the trial court determined the statute applied and the complainant's and her relative's statements to police were

---

[4] A second knife was not recovered.

3

admissible but expressed concern the statements from the complainant's sister and niece were too attenuated from any wrongdoing by Appellant. Following the hearing, the trial continued and despite the complainant's absence, Appellant was found guilty.

**ISSUE ONE—ARTICLE 38.49 HEARING ON FORFEITURE BY WRONGDOING**

Appellant asserts the trial court violated his Sixth Amendment confrontation rights by admitting the complainant's statement because the State failed to prove she was unavailable to testify. He further asserts the allegation that he wrongfully procured the unavailability of the witness was based on mere conjecture without any evidence of his intent to engage in forfeiture by wrongdoing. We disagree.

**STANDARD OF REVIEW**

A trial court's decision to admit evidence will not be disturbed absent a clear abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). A clear abuse of discretion occurs only when the trial court's decision falls outside the zone of reasonable disagreement. *Id*. A finding of forfeiture by wrongdoing will be upheld on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

**APPLICABLE LAW**

Distilled to its essence, article 38.49 prohibits a party to a criminal case from benefitting by procuring the unavailability of a witness through wrongdoing. TEX. CODE CRIM. PROC. art. 38.49(a). The statute provides for a hearing outside the jury's presence to determine the admissibility of evidence and statements related to wrongdoing. *Id.* at

4

(b).  The State must prove by a preponderance of the evidence whether forfeiture by wrongdoing occurred.  *Id.* at (c).

Forfeiture by wrongdoing is an exception to the Sixth Amendment[5] right of confrontation and allows for admission of testimonial statements when it is shown the defendant engaged in conduct designed or intended to prevent a witness from testifying against him.  *Colone v. State*, 573 S.W.3d 249, 264–65 (Tex. Crim. App. 2019); *Griffin v. State*, __ S.W. 3d __, No. 05-24-00987-CR, 2025 Tex. App. LEXIS 9566, at *23 (Tex. App.—Dallas Dec. 12, 2025, pet. filed) (citing *Giles v. California*, 554 U.S. 353, 359–61, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008)).  In other words, the doctrine of forfeiture by wrongdoing bars a defendant from asserting his Sixth Amendment right of confrontation when he wrongfully procured the unavailability of the witness.  *Shepherd v. State*, 489 S.W.3d 559, 573 (Tex. App.—Texarkana 2016, pet. ref'd).  The proponent of a testimonial hearsay statement must show the defendant *intended* to prevent the witness from testifying.  *Id*. (citing *Giles*, 554 U.S. at 361–62).  But the statute does not require the proponent to show the defendant's "sole intent was to wrongfully cause the witness's or prospective witness's unavailability."  Art. 38.49(d)(1).

Simply put, the doctrine of forfeiture by wrongdoing rejects both hearsay objections and confrontation claims if the State proves the declarant's unavailability was a result of the defendant's wrongdoing.  *Gonzalez*, 195 S.W.3d at 119.  Based on equitable principles, the doctrine prevents a defendant from benefiting through his own wrongdoing.

---

[5] The Sixth Amendment affords an accused the right to be confronted by witnesses against him. U.S CONST. amend. VI.  It is obligatory on the States by the Fourteenth Amendment.  *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

*Id.* at 122.  The Court of Criminal Appeals has interpreted article 38.49 as requiring the State to prove the following elements:

- the declarant-witness was unavailable;

- the defendant engaged in wrongful conduct;

- the wrongful conduct procured the witness's unavailability; and

- the defendant intended to procure the witness's unavailability.

*Brown v. State*, 618 S.W.3d 352, 355 (Tex. Crim. App. 2021) (citing *State v. Cox*, 779 N.W.2d 844, 851 (Minn. 2010)).

In *Brown*, the Court held the doctrine of forfeiture by wrongdoing did not apply, reversed the judgment, and remanded the case for the trial court to consider another theory for admission of the complainant's statements.  *Id.* at 359.  The Court reviewed decisions from other jurisdictions and concluded the State's evidence to show that the defendant's wrongdoing procured the complainant's unavailability was too indirect, attenuated, and speculative to show he intended to cause her unavailability at trial.  *Id.* at 356–58.  The Court compared the procurement of a complainant's unavailability to "causation."  *Id.* at 356 (citing *State v. Maestas*, 2018-NMSC 010, 412 P.3d 79, 88 (N.M. 2018)).

Unlike the speculative evidence in *Brown*, in the underlying case, the State established the complainant's unavailability at trial was due to Appellant's wrongdoing. Numerous exhibits, admitted in their entirety for purposes of the article 38.49 hearing, showed Appellant had a tattoo on his abdomen depicting "Eastwood Piru," a known gang.

6

An investigator for the Tarrant County Sheriff's Office gang intelligence unit testified "Fort Worth PD gang unit has tagged [Appellant] as a member of the Eastwood Piru set." Jail tablet messages from Appellant, Rhonda Davis (the wife of an inmate), and two other inmates were admitted. On September 5, 2024, just days before the complainant signed the Affidavit of Non-Prosecution on September 10th, Davis communicated the following to an inmate other than her husband:

> Tell Eastwood I talked to Dee [the complainant] and she made it clear that she not showing up to court but getting her to sign that paperwork is another story. She said she [sic] done with it all she won't [sic] nothing else to do with that whole situation.

Within minutes, the inmate responded, "jus [sic] told em." On September 13, 2024, Appellant sent a message to Davis to "get [D]ee [the complainant] email for me."

In her Victim's Impact Statement signed shortly after the assault in 2022, the complainant stated, "[Appellant] have had people calling me asking me to drop the charges. I don't know if he got somebody after me and my kid . . . I feel like he'll have somebody to come after us at my house . . . I really fear for me and my kid . . . ."

An investigator testified the complainant had previously expressed a willingness to testify. But after she signed the Affidavit of Non-Prosecution, she avoided service of a subpoena by him three times. He was present during a phone call between the complainant and a prosecutor on September 12, 2024, when the complainant expressed her unwillingness to cooperate. The investigator further testified, "[s]o our concern in this case was that there is a big change in her demeanor towards the case and willingness to

cooperate. And so it just seemed that when you have that big of a change, there's some reason for it . . . ."

The evidence showed that within days of the message from Davis to another inmate, the complainant signed the Affidavit of Non-Prosecution and informed the prosecutor she no longer wished to cooperate. Appellant's active participation was not required, and his incarceration did not foreclose a finding of forfeiture by wrongdoing. *See Sanchez v. State*, No. 13-22-00512-CR, 2024 Tex. App. LEXIS 828, at *8 (Tex. App.— Corpus Christi Feb. 1, 2024, pet. ref'd) (mem. op., not designated for publication). Intimidation tactics support a finding of forfeiture by wrongdoing. *Rivera v. State*, 708 S.W.3d 732, 740 (Tex. App.—San Antonio 2024, pet. ref'd). The absence of a forfeiture rule covering this type of conduct would create an intolerable incentive for defendants to bribe, intimidate, or kill witnesses. *Id.* Considering the complainant's statements in her Victim Impact Statement, albeit made in 2022, her avoidance of three attempts to serve her with a subpoena, the investigator's testimony, the jail tablet messages, and Appellant's gang affiliation, there was a causal connection showing Appellant intended to procure the complainant's unavailability at trial. The trial court did not abuse its discretion in granting the State's motion for forfeiture by wrongdoing and admitting the complained-of evidence.

Because we find the trial court did not abuse its discretion, Appellant is barred from raising a complaint that his Sixth Amendment right of confrontation was violated because he could not cross-examine the complainant. *Cf. Brown*, 618 S.W.3d at 355 (finding forfeiture by wrongdoing did not apply but addressing the defendant's confrontation claim which had been raised and preserved in the trial court). But where, as here, the trial court

8

correctly determined the State met its burden to show Appellant committed forfeiture by wrongdoing, his confrontation claims are not well taken. Issue one is overruled.

**ISSUE TWO—VIOLATIONS OF *MIRANDA V. ARIZONA* AND SIXTH AMENDMENT**

Appellant argues the trial court erroneously admitted statements he made to police during questioning without first being administered his *Miranda* rights.[6] He asserts the officers engaged in a "two-step" interrogation technique of question first, warn later. We disagree.

An interrogation technique of question first, warn later is referred to as a two-step interrogation procedure of questioning a suspect without providing *Miranda* warnings until after an incriminating statement is made. *Vasquez v. State*, 411 S.W.3d 918, 919 (Tex. Crim. App. 2013). This undermines *Miranda's* primary purpose of guaranteeing that confessions are made voluntarily and requires exclusion of such confessions unless curative measures are taken before the second confession. *Id.*

Texas courts apply an objective, totality-of-the-circumstances inquiry to determine if a two-step interrogation technique was used in a calculated effort to undermine *Miranda*. *Id.* We review a trial court's ruling on such an issue using a bifurcated standard, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing application of law-to-fact issues de novo. *Carter v. State*, 309 S.W.3d 31, 40–41 (Tex. Crim. App. 2010) (citation omitted). We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). If, however, a deliberate two-step

---

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

9

interrogation technique is used, post-warning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the post-warning statement is made. *Martinez v. State*, 272 S.W.3d 615, 621 (Tex. Crim. App. 2008).

"Custodial interrogation" is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way. *Miranda*, 384 U.S. at 444. A person may be considered being in custody if he has been formally arrested or his freedom of movement has been restrained to a degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254–55 (Tex. Crim. App. 1996). Custody may include the following:

- the person is physically deprived of his freedom of action in any way;

- when an officer tells the person he cannot leave;

- when officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and

- when there is probable cause to arrest and police officers do not tell the person he is free to leave.

*Id.* at 255.

When Appellant was apprehended, he was handcuffed and placed in the backseat of a patrol vehicle. The officer's bodycam footage was admitted over objection that it depicted an involuntary custodial interrogation. The footage shows Appellant was informed he was not under arrest but was being detained while other officers continued to investigate the scene. Appellant initiated questioning of the officer regarding a potential charge and how he could be charged with use of a deadly weapon if no knife had been

10

found. The officer told him a knife was found at the scene and posited that Appellant could have disposed of a knife when he fled the scene. Appellant also asked whether he could speak to the complainant and possibly file charges against her for assaulting him. The officer answered, "we'll talk about it here in a second." Appellant denied threatening the complainant and claimed they had argued because she wanted him to leave the house. The officer asked Appellant if he could search his backpack to which he consented.

The State acknowledges in its brief that Appellant being handcuffed and detained in the backseat of the patrol vehicle "likely constitute[d] being in custody" even though he had not been formally arrested. But the State argues for a statement to be involuntary, there must also be an element of coercion or compulsion in the words communicated by the officer to the person. *Edwards v. State*, No. 02-22-00022-CR, 2023 Tex. App. LEXIS 6058, at *26 (Tex. App.—Fort Worth Aug. 10, 2023, pet. ref'd) (mem. op., not designated for publication); *Smith v. State*, 60 S.W.3d 885, 889 (Tex. App.—Amarillo 2001, no pet.). Absent any compulsion by the officer, any statements by the person in custody do not arise from interrogation. *Smith*, 60 S.W.3d at 889. An officer's response to a question initiated by someone in custody does not amount to an interrogation even when the question relates to the offense. *Anderson v. State*, No. 02-23-00211-CR, 2024 Tex. App. LEXIS 5309, at *15 (Tex. App.—Fort Worth July 25, 2024, pet. ref'd). Volunteered statements by a person in custody are not barred by *Miranda*. *Pugh v. State*, 624 S.W.3d 565, 568 (Tex. Crim. App. 2021).

In the underlying case, when Appellant was apprehended and detained in the backseat of the patrol vehicle, he was not questioned by any officers about the alleged

offense. He did not confess or make incriminating statements at that time. To the contrary, it was Appellant that questioned the officer regarding the offense and a possible deadly weapon. He also asked if he could speak with the complainant and press charges against her. The officer specifically told him they would talk at a later time. Thus, there was no two-step interrogation technique used to circumvent *Miranda*. We conclude no custodial interrogation occurred and the trial court did not abuse its discretion in admitting the officer's bodycam footage. Issue two is overruled.

### ISSUE THREE—ADMISSION OF VICTIM'S IMPACT STATEMENT

Appellant maintains the trial court erroneously admitted an unauthenticated Victim's Impact Statement in violation of his right to confront his accuser and that it violated his Sixth Amendment right of confrontation. We disagree and raise an eyebrow to Appellant's argument when he clearly withdrew his objection to the issue at trial.

During trial, the State offered a redacted version of the complainant's Victim Impact Statement into evidence via the testimony of the Victim's Assistance Coordinator. Defense counsel questioned the witness and discovered that victim impact statement forms are sent and received through the mail. The coordinator had never met or spoken with the complainant prompting defense counsel to lodge an objection under Rule 901 of the Texas Rules of Evidence related to authentication of documents. The State responded that the objection would open the door to the reason for the complainant's

12

absence from the trial—Appellant's wrongdoing.  Defense counsel then stated, "we withdraw the objection and let it in."[7]

Preservation of error is a systemic requirement on appeal.  *Ford v. State*, 305 S.W.3d 530, 532 (Tex. 2009).  Appellate courts should not address an issue that has not been preserved.  *Id.*

Referencing *Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013), the State asserts the withdrawal of the objection and acquiescence to admission of the exhibit constituted an abandonment of any prior complaint and thus a waiver of Appellant's authentication complaint on appeal.  *Thomas* held that a later statement of "no objection" following an earlier-preserved error is context-dependent.  *Id.*  If the "no objection" statement does not constitute an abandonment of a claim of error that was preserved earlier, then an appellate court should not regard the claim as "waived."  *Id.*  But, if from the record as a whole, the appellate court cannot determine if abandonment was intended, it should regard the "no objection" statement to be a waiver of the earlier-preserved error.  *Id.* at 885–86.

In the underlying case, defense counsel's statement to "let it in" and request to have the jury instructed to disregard his authentication objection is an unequivocal abandonment of his objection.  Thus, his complaint regarding a lack of authentication of the Victim's Impact Statement was not preserved for appellate review.  Issue three is overruled.

---

[7] Appellant's brief includes an excerpt from the coordinator's testimony and defense counsel's objection under Rule 901.  However, he did not include the portion of the excerpt in which defense counsel withdrew his objection.

**ISSUES FOUR AND FIVE—ADMISSION OF JAIL TABLET MESSAGES**

By his fourth issue, Appellant contends the trial court erred in admitting State's Exhibits 1, 3, and 11 (jail tablet messages between Appellant, Rhonda Davis, her inmate husband, and two other inmates) during the punishment phase because they were not properly authenticated and were improper hearsay evidence. By his fifth issue, Appellant alleges error in the admission of those same exhibits as being in furtherance of a conspiracy.[8] We disagree.

**Authentication**

Authentication of evidence is a preliminary question for the trial court to decide. *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). The proponent of the evidence must make a threshold showing that is sufficient to support a finding the matter in question is what its proponent claims. TEX. R. EVID. 901(a). The central issue in authentication of electronic communications is whether those communications are sufficiently linked to the purported author to establish him as the actual author since such communications are susceptible to fabrication and manipulation. *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.). Authentication depends on each case's unique facts and circumstances and may occur in myriad ways including through the testimony of a witness with knowledge or through evidence showing distinctive

---

[8] On appeal, Appellant raises arguments under Rules 602 (requiring witness to have personal knowledge of the matter) and 701 (opinion testimony by lay witness) of the Texas Rules of Evidence. However, during the direct testimony and voir dire testimony of the gang intelligence unit witness, Appellant objected to the jail tablet messages on grounds of authenticity and relevance. A trial objection based on one legal theory may not be used to support a different legal theory on appeal. *Heidelberg v. State*, 144 S.W.3d 535, 543 (Tex. Crim. App. 2004).

characteristics. *Butler v. State*, 459 S.W.3d 595, 601 (Tex. Crim. App. 2015) (citing TEX. R. EVID. 901(b)(1)).

During the punishment phase, a technician for Viapath Technologies testified she is the custodian of records and that the challenged exhibits were fair and accurate records kept by Viapath. It is a company that stores data from communication devices used by inmates to communicate with family and friends outside the prison system. Defense counsel objected to the exhibits as hearsay which could not be authenticated without verification of the source or author of the communications in the exhibits. The State responded the exhibits were from the Tarrant County Jail records and the trial court overruled the objection. But the State was instructed not to display the exhibits in any way to the jury until further foundation could be provided showing their relevance.

The gang unit investigator identified three of Appellant's cellmates and testified they are all housed in the same facility. During direct examination, he explained that inmates who send messages on jail tablets are identified through facial recognition, a unique "PIN code," and their unique identifying number referred to as a "CID." He collected records of messages between Appellant and Davis. However, during voir dire questioning by defense counsel, the investigator acknowledged that once an inmate logs into a tablet, it is possible for him to pass it to another inmate to use. Defense counsel objected to admission of the challenged exhibits on failure to authenticate the messages and for having no relevance. The trial court overruled the objection noting it was for the jury to decide the weight of the evidence and not its admissibility.

15

On September 4, 2024, Davis sent Appellant a message "[t]his Que call me on this number 469265309."[9]  On September 5, Davis sent a message to another inmate providing, "Bro this Que Que tell Eastwood [gang reference] to check tha tablet." Approximately one hour later, the inmate responded "I told em . . . ."  Davis then responded to that inmate, "Tell Eastwood I talked to Dee [the complainant] and she made it clear that she not showing up to court but getting her to sign that paperwork is another story.  She said she done with it all she won't [sic] nothing else to do with that whole situation."  The inmate responded to Davis, "jus told em."  As previously noted, the complainant signed the Affidavit of Non-Prosecution on September 10, 2024.

On September 11, Appellant sent Davis a message providing, "[m]y lawyer came up here yesterday."  Later that day, Appellant asked Davis to "[l]ook on the internet and see if they really passed that law about aggravated time do 35%."  On September 12, Davis responded, "Yeah, that's real bro.  But why u worried bout that bro u coming home." On September 13, Appellant asked Davis "[g]et [D]ee [the complainant] email for me" to which Davis responded, "[o]k bet."

Appellant correctly points out that none of the authors of the messages testified. Neither did a witness with personal knowledge of the messages.  But Appellant is incorrect in asserting the circumstantial evidence is too weak for authentication purposes. "Conclusive proof of authenticity before allowing admission of disputed evidence is not required." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).  It "merely requires some evidence sufficient to support a finding that evidence in question is what

[9] Davis's husband's name is Quentin and the phone number belongs to her.

the proponent claims." *Id.* The trial court makes a preliminary determination of admissibility and authenticity. TEX. R. EVID. 104(a); *Tienda*, 358 S.W.3d at 637–38. Appellate review of that determination should not be overturned if it is "within the zone of reasonable disagreement." *Id.* at 638. Ultimately, it is the jury's role to determine whether evidence is what its proponent claims. *Fowler*, 544 S.W.3d at 848–49. This is the "liberal standard of admissibility." *Id.* at 849.

The jail tablet messages reflect that Davis communicated with her husband Quentin, Appellant, and two other inmates. Most of the messages in the exhibits were between Davis and Quentin and unrelated to Appellant's case, but all the messages reflect that Davis was friendly with Appellant and the other two inmates. They used unconventional language and creative spelling referred to as "textism" to communicate.[10] They responded to each other's messages in the same language throughout. Davis and Appellant both referred to the complainant by her nickname "Dee" and to Davis's husband Quentin as "Que." Davis and Appellant referred to the "aggravated" nature of the charge against him. The timeline also lends support to authentication—the communications just days before and after the complainant signed the Affidavit of Non-Prosecution showed Davis believed Appellant would be coming home soon thereafter. The circumstantial evidence is sufficient to support a finding that the jail tablet messages were what the State purported them to be and the trial court did not abuse its discretion in admitting them during the punishment phase. Issue four is overruled.

---

[10] Textism or SMS language is the use of abbreviations and absence of vowels and punctuation to communicate such as "LOL" for "laugh out loud" or "u" for "you."

17

**Hearsay Exception of Furtherance of a Conspiracy**

Hearsay is a statement the declarant does not make while testifying and offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). An exception to hearsay is a statement offered against an opposing party and made by a co-conspirator during and in furtherance of a conspiracy. TEX. R. EVID. 801(e)(2)(E). Such statements are nontestimonial. *Wiggins v. State*, 152 S.W.3d 656, 659 (Tex. App.—Texarkana 2004, pet. ref'd) (citing *Crawford v. Washington*, 541 U.S. 36, 56, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

A conspiracy exists when two or more persons as shown by words or deed agree to commit an unlawful act. *Crum v. State*, 946 S.W.2d 349, 363 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). A conspiracy charge is not required for statements from co-conspirators to be used against a defendant. *Byrd v. State*, 187 S.W.3d 436, 440 (Tex. Crim. App. 2005). The co-conspirator exemption to hearsay is based on agency principles—"the underlying concept being that a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all." *Id.* (citing *Bourjaily v. United States*, 483 U.S. 171, 188–94, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1984) (Blackmun, J., dissenting)).

The out-of-court statement by a co-conspirator must be more than merely related to the conspiracy; it must further the conspiracy. *Guidry v. State*, 9 S.W.3d 133, 148 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 837, 121 S. Ct. 98, 148 L. Ed. 2d 57 (2000). A statement only furthers a conspiracy if it advances the cause of the conspiracy or serves to facilitate it. *Deeb v. State*, 815 S.W.2d 692, 697 (Tex. Crim. App. 1991), *cert. denied*,

505 U.S. 1223, 120 L. Ed. 2d 907, 112 S. Ct. 3038(1992). Statements made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators; (2) with intent to induce another to join the conspiracy; (3) in formulating future strategies of concealment to benefit the conspiracy; (4) with intent to induce continued involvement in the conspiracy; or (5) for the purpose of identifying the role of one conspirator to another. *King v. State*, 189 S.W.3d 347, 360 (Tex. App.—Fort Worth 2006, no pet.). Statements which are not made in furtherance of a conspiracy include (1) casual admissions of culpability to someone the declarant had individually decided to trust; (2) merely narrative descriptions; (3) mere conversations between conspirators; or (4) "puffing" or "boasting" by co-conspirators. *Id.*

To invoke the co-conspirator hearsay exception, the State must show (1) a conspiracy existed; (2) the statement was made during the course of and in furtherance of the conspiracy; and (3) both the declarant and the appellant were members of the conspiracy. *Tyrrell v. State*, 02-17-00258-CR, 2018 Tex. App. LEXIS 8742, at *23 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op., not designated for publication).

During the testimony of the gang unit investigator, he read various jail tablet messages aloud from Davis, Que, Appellant, and another inmate over defense counsel's hearsay objection. The prosecutor indicated the message referring to the complainant's absence at trial was being offered to prove the truth of the matter and as a statement by a co-conspirator in furtherance of a conspiracy. Defense counsel complained the State had no witnesses to verify the messages. The trial court again ruled the weight of the proffered evidence could be determined by the jury.

19

Appellant argues the messages do not show "Eastwood" is Appellant and "Dee" is the complainant. He asserts the messages do not show a threat to the complainant and do not support the existence of a conspiracy.

The exhibits, read in context, show a furtherance of a conspiracy by two or more persons to keep the complainant from testifying against Appellant. Although Davis expressed that getting the complainant to sign the paperwork might be an issue, just days later she did. She also avoided service of a subpoena on three different occasions. The messages show the co-conspirators advanced the cause of the conspiracy—keeping the complainant from pursuing the case against Appellant. Thus, the conspiracy was advanced when the complainant signed the Affidavit of Non-Prosecution. The trial court did not abuse its discretion in admitting State's Exhibits 1, 3, and 11 as exceptions to the rule against hearsay. Issue five is overruled.

**ISSUE SIX—NOTICE REQUIREMENT OF EXTRANEOUS OFFENSE**

Appellant maintains the State did not comply with the requirements of article 37.07, section 3g of the Texas Code of Criminal Procedure by failing to provide him timely notice it intended to introduce a prior aggravated assault charge from 2006. We disagree.

Article 37.07 governs the admissibility of evidence during the punishment phase of trial. TEX. CODE CRIM. PROC. art. 37.07, section 3. The statute provides, in relevant part, as follows:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence. If the attorney representing the state intends to introduce an extraneous crime . . . notice of that intent is reasonable only if the notice includes the date on which and the county in

20

which the alleged crime . . . occurred and the name of the alleged victim of the crime . . . .  The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

TEX. CODE CRIM. PROC. art. 37.07, § 3g.

The purpose of the statute is to avoid unfair surprise and allow the defendant adequate time to prepare for the extraneous offense evidence.  *Nance v. State*, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd).  The trial court has discretion to determine what constitutes substantial compliance with the statute's notice requirement although absolute non-compliance may not be excused.  *Olson v. State*, No. 02-14-00143-CR, 2015 Tex. App. LEXIS 4180, at *7 (Tex. App.—Fort Worth April 23, 2015, no pet.) (mem. op., not designated for publication).

On April 19, 2023, Appellant filed a *Motion for Pre-Trial Disclosure of All Evidence Which the State Intends to Offer Pursuant to Article 37.07 of the Texas Code of Criminal Procedure*.  The motion included a blank order for the trial court to indicate its ruling.  On July 24, 2024, the State filed its notice of intent to offer a charge for assault causing bodily injury from October 23, 2006, for enhancement purposes.[11]  On August 20, 2024, the State supplemented its notice to include a charge of aggravated assault with a deadly weapon from October 23, 2006.  The supplemental notice provides the cause number, date of offense, county in which the crime occurred, and the alleged complainant's name. Trial commenced on September 16, 2024.

---

[11] This notice is not file-stamped but was signed on July 24, 2024.

21

During the punishment phase, a police officer testified he participated in an investigation involving Appellant in 2006 for aggravated assault with a deadly weapon. As the officer was about to be shown photos of the victim, defense counsel objected that proper notice of the extraneous offense had not been provided as required by statute. The prosecutor responded the offense had been "pled down to an assault bodily injury" and that proper notice of that offense had been given several months earlier. Defense counsel answered that the notice did not include specifics and was also untimely. He informed the trial court he had filed a pretrial motion requesting any evidence the State intended to offer under article 37.07. The prosecutor answered that defense counsel's motion was never heard or ruled on by the trial court. When the trial court asked defense counsel whether he had requested the motion be heard or ruled on, he responded, "No, I guess we didn't." Defense counsel acknowledged there was no written order regarding his motion and the trial court allowed the prosecution to proceed with its questioning.

The law is clear that a defendant's motion requesting extraneous evidence under article 37.07, section 3g and a request for the trial court to order such notice requires a ruling. *Green v. State*, 713 S.W.3d 865, 885 (Tex. Crim. App. 2025); *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998); *Espinosa v. State*, 853 S.W.2d 36, 39 (Tex. Crim. App. 1993) (holding a motion for discovery pursuant to Rule 404(b) requires a ruling from the trial court to trigger notice requirements).[12] The record reflects Appellant filed a pretrial motion which included a form order for the trial court to issue its ruling. The order is blank. The colloquy between defense counsel, the prosecutor, and the trial court shows

---

[12] Article 37.07, section 3g requires notice in the same manner as required by Rule 404(b) of the Texas Rules of Evidence.

defense counsel never asked for the motion to be heard, and the trial court never ruled on the motion.  Thus, Appellant failed to trigger the notice requirements of article 37.07, section 3g.  Issue six is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


Alex Yarbrough
Justice

Do not publish.